**Bonita KEETON, Appellant,**

v.

**WELLS FARGO CORPORATION, et al., Appellees.**

**No. 08–CV–990.**

District of Columbia Court of Appeals.

Argued Nov. 5, 2009.

Decided Jan. 21, 2010.

Anita Ghosh and Daniel DiLuccia, Student Attorneys, with whom Elliott S. Milstein, Supervising Attorney, and Sheri Strickler and Natalie Huls, Student Attorneys, were on the brief, for appellant.

David R. Mahdavi, McLean, VA, with whom John G. Calender, Washington, DC, was on the brief, for appellee.

Cyril V. Smith, Baltimore, MD, with whom David Reiser, Washington, DC and Eric Angel, were on the brief, for amicus curiae The Legal Aid Society of the District of Columbia.

Before GLICKMAN and KRAMER, Associate Judges, and NEBEKER, Senior Judge.

KRAMER, Associate Judge:

This dispute concerns the alleged unconscionability of an arbitration clause in a standardized-form consumer contract of adhesion. Because of the procedural posture of the case—it is before us after the trial court granted appellee's motion to dismiss—we summarize the relevant facts as appellant has alleged them.

Ms. Keeton is a school bus driver with four dependent children who appears *in forma pauperis*. Easterns is a used car dealership chain with seventeen locations throughout the region. On July 28, 2005, Ms. Keeton purchased a used Sports Utility Vehicle (a 2001 Mazda Tribute XL)

("SUV") from Easterns for $19,955. Acting as the agent for Wells Fargo, a national banking concern, Easterns provided financing for the purchase. At the conclusion of the transaction, Ms. Keeton agreed to pay Easterns (and through Easterns, Wells Fargo) $389.92 per month for the next six years, for a total sum of $28,074. The fair market value of the SUV, if it had been in excellent condition, was $11,400. Within the first year, the SUV broke down twice, while Ms. Keeton continued to make payments. Her subsequent attempts to refinance failed because the value of the SUV was far below the loan amount, and she defaulted just over one year after she had made the purchase. Soon thereafter, Wells Fargo repossessed and resold the SUV for $6,100. Wells Fargo then demanded that Ms. Keeton pay the difference between the amount she still owed and the resale value of the SUV, or $13,368.95. In response, Ms. Keeton sued both Easterns and Wells Fargo in the Superior Court, alleging that Easterns violated the D.C. Consumer Protection Procedures Act ("CPPA")[1] by knowingly failing to disclose the SUV's fair market value. In addition to the CPPA claim, Ms. Keeton alleged that Easterns and Wells Fargo had engaged in fraud and fraudulent misrepresentation, and that the sale contract[2] was unconscionable. Appellees filed a Motion to Dismiss and to Compel Arbitration,[3] which the trial court granted, dismissing the

1. D.C.Code §§ 28–3901 to –3905.

2. Ms. Keeton signed a Buyer's Order, a standardized-form contract with terms prepared in advance by Easterns. There is no evidence that any of the terms were open to negotiation or were, in fact, negotiated.

3. Easterns and Wells Fargo moved to dismiss pursuant to the arbitration clause, which is among the seventeen "Additional Conditions of Sale" on the back of the Buyer's Order. It reads, in its entirety, as follows:

   ARBITRATION TERMS—The parties agree that all disputes, claims or controversies arising from or relating to the Purchaser's purchase of the Vehicle, the Agreement or the relationship which result (sic) from the Agreement, or the validity of this arbitration clause or the Agreement shall be resolved by binding arbitration by one arbitrator located in the Northern Virginia area selected by the Dealer (or the assignee of any Retail Installment Sales Contract) with the consent of the Purchaser. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a Court, but that they prefer to resolve their disputes through arbitration, except that the Dealer (or the Assignee of any Retail Installment sales Installment Sales (sic) Contract) may proceed with Court action in the event the purchaser fails to pay any sums due under the Agreement. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO COURT ACTION BY THE ASSIGNEE (AS SET FORTH HEREIN ABOVE). Except as provided herein, the parties agree and understand that all disputes arising under case law, statutory law, and all other laws, including, but not limited to all contract, tort or property disputes will be subject to binding arbitration in accordance with the terms thereof. The parties agree that the arbitration shall have all power provided by law and the agreement. The parties agree that the cost of arbitration shall be borne equally between the parties, provided however, that the arbitrator may, in the interests of justice, order that the losing party pay the prevailing party's costs. A Dispute is any question as to whether something must be arbitrated, as well as any allegation concerning a violation of state or federal statute that may be the subject of binding arbitration, any purely monetary claim greater than $1,000.00 in the aggregate whether contract tort, or other, arising from the negotiation of and terms of the Buyer's Order, any service contract or insurance product, or any retail installment

case with prejudice. This appeal followed. Our review is *de novo*.[4]

■■■ At the outset, we need to satisfy ourselves that we have jurisdiction.[5] Although appellees have conceded the issue, "[p]arties cannot waive subject matter jurisdiction by their conduct or confer it ... by consent, and the absence of such jurisdiction can be raised at any time."[6] We have previously held that orders to compel arbitration are not appealable, and we have even construed an ambiguous order to dismiss as a stay,[7] but we have never considered the situation where a trial court dismissed a case with prejudice in addition to compelling arbitration. Because such an order is unambiguously final,[8] we hold that appellate jurisdiction exists where the

trial court has effectively prevented a plaintiff from litigating the issue in the future.[9]

■■■ Turning to the merits, we detect several problems with the dismissal order. First, our well-settled unconscionability standard calls for a strongly fact-dependent inquiry.[10] This standard, coupled with the requirement that a court conduct "an expedited evidentiary hearing"[11] when parties dispute the validity of the arbitration clause, makes the order below impossible to affirm.[12] For example, appellant argued that she lacked meaningful choice as part of her unconscionability allegation, which Easterns countered by pointing out that she could have purchased a used car from another dealer. It was error for the

---

sale contract or lease (but this arbitration provision, does not apply to and shall not be binding on any assignee thereof); provided, however, that your failure to provide consideration to be paid by you (including your failure to pay a note, a dishonored check, failure to provide a trade title, or failure to pay deficiency resulting from additional payoff on trade) as well as our right to retake possession of the vehicle pursuant to this Buyer's Order shall not be considered a Dispute and shall not be subject to arbitration.

**4.** We review a dismissal *de novo*. *Chamberlain v. American Honda Fin. Corp.*, 931 A.2d 1018, 1022–23 (D.C.2007).

**5.** Subject matter jurisdiction is a question of law, which we also review *de novo*. *Evans v. Dreyfuss Bros.*, 971 A.2d 179, 185 (D.C.2009).

**6.** *Chase v. Public Defender Serv.*, 956 A.2d 67, 75 (D.C.2008). *See* Super. Ct. Civ. R. 12(h)(3) ("Whenever it appears by suggestion of the parties *or otherwise* that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action.") (emphasis added).

**7.** *Judith v. Graphic Commc'ns Int'l Union*, 727 A.2d 890, 892 (D.C.1999).

**8.** *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 920 (D.C.1992) (citing *Glick v. Ballentine Produce, Inc.*, 397 F.2d 590, 593 (8th

Cir.1968) for the proposition that a dismissal with prejudice effectively ends the dispute because "when [the judge] dismissed that claim with prejudice, he effectively barred [plaintiff] from relitigating that issue after the arbitrators issued their award.").

**9.** *American Fed'n of Gov't Employees v. Koczak*, 439 A.2d 478, 479 (D.C.1981) (citing D.C.Code § 11–721(a)(1) (1973)) (correctly noting that we have jurisdiction over "all final orders and judgments of the Superior Court of the District of Columbia.").

**10.** *E.g., Bennett v. Fun & Fitness of Silver Hill, Inc.*, 434 A.2d 476, 480 (D.C.1981) (citing *Williams v. Walker–Thomas Furniture Co.*, 121 U.S.App.D.C. 315, 320, 350 F.2d 445, 450 (1965)) ("At the outset, however, we note that any evaluation of unconscionability is tied so closely to the facts of a particular case that we are not in a position to say, on the basis of the limited pleadings before us, whether this particular contract is unconscionable.").

**11.** *Haynes v. Kuder*, 591 A.2d 1286, 1290 (D.C.1991).

**12.** In addition, on a motion to dismiss, the trial court was required to take appellant's factual allegations as true. *E.g., Caglioti v. Dist. Hosp. Partners, LP*, 933 A.2d 800, 807 (D.C.2007). This the court failed to do.

court to adopt Easterns's contention without conducting any fact-finding to determine the impact of the existence of other dealerships on appellant's options.[13] The court also impermissibly determined that "the parties reasonably entered into the agreement." Given the factual nature of a reasonableness determination, especially in light of the unconscionability standard which demands a more developed record, the court's ruling was premature at best. On remand, the trial court should allow discovery, followed by an evidentiary hearing to determine the unconscionability of the arbitration clause.[14]

■ In addition, the trial court, relying on the Supreme Court's opinion in *First Options v. Kaplan,*[15] concluded that the arbitrator should determine the validity of the arbitration clause, as required by the language of Easterns's arbitration clause.[16] The court erred by conflating two distinct legal concepts. *First Options* involved an arbitrability dispute. An arbitrability dispute is over *what* the parties have agreed to submit to the arbitrator's authority, that is, the scope, but not the validity, of an arbitration clause.[17] A challenge that the clause is unconscionable disputes its validity, not its scope, and it is up to the courts, not arbitrators, to adjudicate the validity of an arbitration clause.[18] Regardless of what authority Easterns's form contract purported to confer on the arbitrator, the validity of the arbitration clause itself was for the court to decide.[19]

---

13. If every dealership in the region also imposes similar arbitration clauses in similar contracts of adhesion, their existence would not amount to reasonable choice. Indeed, according to our *amicus,* such clauses are nearly ubiquitous and it is not clear whether Ms. Keeton had access to another dealer who would not insist on a similar contract containing a similar arbitration clause.

14. *Haynes, supra* note 11, 591 A.2d at 1290. Several other jurisdictions also adhere to the view that a trial court ought to hold a summary hearing when parties dispute material facts pertaining to the validity of an alternative dispute resolution provision in a contract. *E.g., J.A. Walker Co. v. Cambria Corp.,* 159 P.3d 126, 130 (Colo.2007); *Nitro Distrib., Inc. v. Dunn,* 194 S.W.3d 339, 352 (Mo.2006); *Chapman v. King Motor Co. of South Florida,* 833 . So.2d 820, 821–22 (Fla.Dist.Ct.App. 2002); *Rosenthal v. Great Western Fin. Sec. Corp.,* 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061, 1072 (1996); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992).

15. 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (holding that parties can agree to have the arbitrator decide the arbitrability of a dispute).

16. *Supra* note 3.

17. *See Certain Underwriters at Lloyd's London v. Ashland, Inc.,* 967 A.2d 166, 173 (D.C.2009) ("Arbitrability refers to whether the parties agreed to arbitrate a particular type of issue....").

18. *See Hercules & Co. v. Shama Rest. Corp.,* 566 A.2d 31, 39 (D.C.1989) ("We recognize that if there is a claim of fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the court may proceed to adjudicate it.") (internal citations omitted); *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1263–64 (9th Cir.2006) (en banc) ("[I]t was error to hold that consideration of the unconscionability of the arbitration provision was to be determined by the arbitrator.... [W]hen the crux of the complaint is ... the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable...."); *Burden v. Check Into Cash of Ky., LLC,* 267 F.3d 483, 491 (6th Cir.2001) ("[I]ssues relating to the making of an arbitration agreement, separate from the underlying contract, are to be determined by the court, not the arbitrator.").

19. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so. To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract....").

1123

After consideration of the record on appeal, the briefs of the parties, and the oral argument at which appellee conceded that the dismissal of the complaint with prejudice was error, we remand this case. On remand, the trial court should ensure that the parties have an opportunity to develop the record with respect to all the disputed factual issues central to a proper determination of unconscionability. Some of these issues are: the significance of the imbalance of power in arbitrator selection given Easterns's status as a "repeat player" in the arbitration system, the fact that the clause reserves some litigation avenues to Easterns while entirely barring Ms. Keeton from seeking judicial action, as well as the costs imposed on Ms. Keeton by the arbitration procedure and their impact on her ability to seek redress.[20] Should the court still find the arbitration clause valid after considering a fully developed record, it should, instead of dismissing the case, stay the proceedings pending the outcome of the arbitration.[21]

*Reversed and remanded.*

---

**20.** For an insightful analysis of the cost issue, see *Cooper v. MRM Inv. Co.,* 367 F.3d 493, 509–12 (6th Cir.2004).

**21.** *Cf. Judith, supra* note 7, 727 A.2d at 892.