*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 09-CV-893

COLIN ANDREW, APPELLANT,

V.

AMERICAN IMPORT CENTER, APPELLEE,

AND

DISTRICT OF COLUMBIA, INTERVENOR.

Appeal from the Superior Court of the
District of Columbia
(CAB-8450-08)

(Hon. Anita M. Josey-Herring, Trial Judge)

(Argued June 5, 2014                                 Decided February 26, 2015)

*Thomas C. Willcox* for appellant.

*James C. McKay*, *Jr.*, with whom *Irvin B. Nathan*, then-Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. Alikhan*, Deputy Solicitor General, were on the brief, for intervenor.

*V. David Zvenyach*, with whom *John Hoellen* was on the brief, for *amicus curiae* District of Columbia Council.

*David R. Mahdavi* filed a Statement in Lieu of Brief for appellee.

Before WASHINGTON, *Chief Judge*, THOMPSON, *Associate Judge*, and NEBEKER, *Senior Judge*.

WASHINGTON, *Chief Judge*: Appellant Colin Andrew brought suit in the Superior Court against American Import Center ("AIC") and others, alleging breach of contract, fraud, and violations of the Consumer Protection Procedures Act arising out of his purchase of a car from AIC. The Superior Court stayed appellant's case and ordered the parties to proceed to arbitration pursuant to an arbitration agreement that was signed as part of the purchase transaction. Andrew appealed. The question before this court is whether we have jurisdiction to hear an appeal from an order compelling a consumer to arbitrate with a commercial entity based on an arbitration clause in an adhesion contract. For the following reasons, we hold that such an order is interlocutorily appealable pursuant to D.C. Code § 11-721 (a)(2)(A) (2012 Repl.). Further, we find that appellant raised a triable issue of fact as to the unconscionability of the arbitration agreement and we therefore remand the case to the trial court to hold an evidentiary hearing and make factual findings concerning unconscionability.

## I. Facts

Appellant Colin Andrew brought suit against AIC, Tehran Ghasri ("Ghasri"), and Wells Fargo Auto Finance ("Wells Fargo"), alleging fraud, breach of contract, and violations of the District of Columbia Consumer Protection

Procedures Act, D.C. Code § 28-3901 *et seq.* (2012 Repl.). Appellant claimed that in December of 2006, Ghasri, an AIC salesman, requested that he help a friend, Baback Fadavi ("Fadavi") purchase a vehicle. Fadavi was 90% blind, such that he could not obtain a driver's license or purchase a car, but he needed one so that his mother could drive him around. Appellant alleged that Ghasri asked him to guarantee the purchase of the vehicle, which Mrs. Fadavi would own. In reality, the contract that appellant signed listed him as the purchaser rather than the guarantor of the vehicle. The vehicle was delivered to Mrs. Fadavi, but the title was in appellant's name. The vehicle was later repossessed and sold, and appellant filed his suit after a deficiency of $8,817.50 was assessed against him.

AIC and Wells Fargo moved to dismiss appellant's complaint and compel arbitration because there was an arbitration clause in the finance contract he had signed. Andrew moved for discovery on the issue of whether the arbitration agreement was unconscionable. The trial court denied AIC's and Wells Fargo's motion to dismiss but granted their motion to compel arbitration, staying the proceedings in Superior Court pending completion of arbitration.[1] The trial court rejected appellant's unconscionability argument, concluding that he had not

---

[1] Appellant subsequently stipulated to the dismissal of Wells Fargo from the case.

presented a triable issue of material fact. Appellant timely appealed. This court issued an order directing both parties to file briefs addressing whether we had jurisdiction to hear this appeal given first that, in the past, we have held that orders to compel arbitration are not appealable, and second, that it was not clear that the D.C. Council had the authority to pass D.C. Code § 16-4427 purporting to make such orders appealable.

## II.    Jurisdictional Analysis

In 1970, Congress enacted the District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, Title I, 84 Stat. 473 (1970), D.C. Code § 11-101 *et seq.* (2012 Repl.), establishing this court as "[t]he highest court of the District of Columbia" and providing that:

> The District of Columbia Court of Appeals has jurisdiction of appeals from—
>
> (1)    all final orders and judgments of the Superior Court of the District of Columbia; [and]
>
> (2)    interlocutory orders of the Superior Court of the District of Columbia—
>
> (A) granting, continuing, modifying, refusing, or dissolving or refusing to dissolve or modify injunctions; . . .

D.C. Code § 11-721 (a) (2012 Repl.). Congress also passed the Home Rule Act,

D.C. Code § 1-201.01 *et seq.* (2012 Repl.), with the intent of giving the D.C. Council broad authority to legislate upon "all rightful subjects of legislation within the District," § 1-203.02, but limiting the Council's ability to pass legislation that affects this court's jurisdiction:

> (a) The Council shall have no authority to pass any act contrary to the provisions of this chapter except as specifically provided in this chapter, or to . . .
>
> . . . .
>
> > (4) Enact any act, resolution, or rule with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia courts).

§ 1-206.02 (a)(4).[2]  Still, this court has repeatedly held that § 206 (a)(4) must be construed as a narrow exception to the Council's otherwise broad legislative power "so as not to thwart the paramount purpose of the [Home Rule Act], namely, to grant the inhabitants of the District of Columbia powers of local self-government." *Bergman v. District of Columbia*, 986 A.2d 1208, 1226 (D.C. 2010).

Subsequently, in 1977, the D.C. Council enacted the District of Columbia

---

[2]  D.C. Code § 1-206.02 (a)(4) is referred to as "§ 206 (a)(4) of the Home Rule Act" throughout.

Uniform Arbitration Act ("UAA"), D.C. Code § 16-4301 *et seq*. Relevant to the instant case was a section of the UAA that outlined whether (and which) arbitration orders could be appealed to this court. Section 16-4317 of the UAA read in relevant part:

> (a)     For purposes of writing an appeal, the following orders shall be deemed final:
>
> > (1)     An order denying an application to compel arbitration . . .

D.C. Code 1978 Supp., tit. 16 app., s 18. Then, in *American Fed'n of Gov't Emps. v. Koczak*, 439 A.2d 478, 480 (D.C. 1981), this court examined this section of the UAA and concluded that as opposed to an order denying a motion to compel arbitration, an order granting a motion to compel arbitration was not appealable, for two reasons. First, the language of the UAA included orders denying a motion to compel arbitration on the list of final, appealable orders but did not similarly include orders to compel arbitration on that list. *Id.* Second, the omission of orders compelling arbitration from that list made sense given that an order to compel arbitration would not be considered a final order like an order denying a motion to compel arbitration because the former "does not dispose of the entire case on the merits. Rather, the parties' rights and obligations are finally determined only after arbitration is had. . . ." *Id.*

Finally, in 2007, the Council replaced the UAA with the District of Columbia Revised Uniform Arbitration Act ("RUAA"), D.C. Code § 16-4401 *et seq.* (2012). The RUAA also contains a section that outlines when an appeal may be taken. § 16-4427. That section reads, in relevant part:

> (a) An appeal may be taken from:
>
> > (1) An order denying or granting a motion to compel arbitration; . . .

§ 16-4427 (a)(1). The question currently before the court is whether this section of the RUAA violates § 206 (a)(4) of the Home Rule Act by impermissibly expanding this court's jurisdiction to allow parties to appeal from an order granting a motion to compel arbitration, a type of an order we have previously determined not to be appealable.

### A. An order staying litigation and compelling the parties to arbitrate is not a final order under D.C. Code § 11-721 (a)(1).

This court has recognized the Supreme Court's "well-developed and long-standing" definition of a final order, which is "a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000) (internal

quotation marks omitted); *Crown Oil & Wax Co. v. Safeco Ins. Co.*, 429 A.2d 1376, 1379 (D.C. 1981) (explaining that as a "general rule . . . an order is final for purposes of appeal . . . [when] it disposes of the entire case on the merits"). This court has specifically and repeatedly stated in several cases that an order granting a motion to compel arbitration and stay proceedings is not a final order.[3] Although

---

[3] *See Koczak*, 439 A.2d at 480 (internal quotation marks, citations, and footnotes omitted) (explaining that "the Council's omission of an order to compel arbitration from the list of orders deemed to be final set forth in [§ 16-4317 of the UAA] is consistent with the general rule that . . . an order is final for purposes of appeal . . . [when] it disposes of the entire case on the merits. An order to compel arbitration does not dispose of the entire case on the merits. Rather, the parties' rights and obligations are finally determined only after arbitration is had, or, if an arbitrator's award is challenged, after a court enters judgment upholding, modifying, or vacating the arbitrator's award"); *see also Judith v. Graphic Commc'ns Int'l Union*, 727 A.2d 890, 891 (D.C. 1999) (citations omitted) (holding that where the trial court had referred the parties to arbitration but it was ambiguous as to whether the court had also dismissed the underlying case, dismissal and referral to arbitration should really be construed as an order to stay litigation pending arbitration, which under *Koczak* and *Umana* was not a final, appealable order); *Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717, 721 (D.C. 1995) (citing *Koczak*, 439 A.2d at 480) (concluding that this court lacked jurisdiction to hear an appeal from an order compelling Umana to arbitrate his claims because that order was not a final order under § 11-721 (a)(1), because it was not an appealable interlocutory order under *Brandon* because it did not frustrate (in contrast with facilitate) arbitration, and because § 16-4317 of the UAA did not attempt to make orders compelling arbitration final and appealable); *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 35 n.4 (D.C. 1989) (citing *Brandon v. Hines*, 439 A.2d 496, 504 (D.C. 1981)) (characterizing the fact that "Hercules [was not] claim[ing] that the referral to arbitration [wa]s a final judgment" as a "correct assessment"). *But see Parker v. K & L Gates, LLP*, 76 A.3d 859 n.3 (D.C. 2013) (citations omitted) (holding that an order compelling arbitration in an independent proceeding is appealable as a final order because in that context, the order compelling arbitration resolves the sole issue before the

(continued . . .)

these cases arose in the context of the UAA rather than the RUAA, in each case the court's opinion made clear that the exclusion of orders compelling arbitration from the list of final appealable orders in § 16-4317 was consistent with our case law interpreting § 11-721 (a)(1), and that we did not consider such orders final for purposes of appeal.

Similarly, in the instant case the order granting the motion to compel arbitration is not a final order and therefore is not appealable as such. As the Supreme Court explained in *Green Tree Financial*, while an order to compel arbitration entered in conjunction with a dismissal of the case on the merits results in a final order for purposes of appellate review, 531 U.S. at 87, "[h]ad the District Court entered a stay instead of a dismissal . . . that order would not be appealable." *Id.* at 87, n.2. This court has followed the Supreme Court's lead, holding that it is only "where a trial court dismisse[s] a case with prejudice in addition to compelling arbitration . . . [that] such an order is unambiguously final [because] . . . the trial court has effectively prevented a plaintiff from litigating the issue in the future." *Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1121 (D.C. 2010) (footnotes omitted). Thus, where, as here, the trial court granted appellees'

_____

(continued . . .)
court).

motion to compel arbitration and stayed the case pending resolution of the arbitration, the order is not a final order and therefore, is not appealable under § 11-721 (a)(1).

**B.  As a general matter, an order staying litigation and compelling arbitration may not be appealed interlocutorily.**

The District's main argument in this case is that an order compelling a party to arbitrate is injunctive in nature, and therefore, can be appealed interlocutorily. An injunction is "an equitable remedy, consisting of a command by the court, through an order or writ, that the party to whom it is directed do, or refrain from doing, some specified act." *McQueen v. Lustine Realty Co.*, 547 A.2d 172, 176 (D.C. 1988) (en banc).  In *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981), the Supreme Court held that an order, though not expressly labeled an injunction, might still have the effect of an injunction and could thus be treated as such if it 1) has the "practical effect" of an injunction and 2) the litigants would suffer a "serious, perhaps irreparable consequence" from the trial court's order such that it could only be "effectually challenged" by immediate appeal.[4]

---

[4]  The District's first argument in its brief on this point is that the court need not apply the *Carson* test in order to conclude that an order granting a motion to stay litigation pending arbitration is an order respecting injunctions that is therefore

(continued . . .)

This court adopted the so-called *Carson* test in *Brandon v. Hines*, 439 A.2d 496 (D.C. 1981), in which a building contractor brought suit for breach of contract against the defendant whose property he had agreed to renovate. *Id.* at 497. Because the contract contained an arbitration clause, the trial court stayed the case and ordered the parties to arbitrate. *Id.* After the arbitrators returned an award in appellant's favor, the trial court denied appellant's motion to confirm the award as a judgment, vacated the award (because the arbitration panel had decided the case out of time), and ordered the parties to proceed to trial. *Id.* The question in the case (which is only indirectly relevant to the instant case) was whether the trial court's order denying the motion to confirm the award, vacating the award, and directing the parties to trial was an appealable order. *Id.*

To place its analysis in perspective, the *Brandon* court looked first to federal case law concerning the appealability of orders relating to arbitration under 28

---

(continued . . .)

appealable interlocutorily. The District's argument is that though it is not labeled as such, this type of order is expressly injunctive in nature. However, the only case from this jurisdiction that the District cites to support the proposition that *Carson* need not be applied is *McQueen*, 547 A.2d at 172, a case in which this court explicitly applied the *Carson* test to hold that pretrial protective orders in Landlord-Tenant Court satisfy that test and are therefore immediately appealable under § 11-721 (a)(2)(A). We are not aware of any case in which this court has held an order to be injunctive without applying the *Carson* test (or its predecessor tests.).

U.S.C. § 1292, the federal analogue to D.C. Code § 11-721. *Id.* at 503. The court examined federal case law in this area from the late-1970s to the early 1980s, focusing heavily on the Supreme Court's then-recent decision in *Carson*. *Id.* at 503-06. In applying the *Carson* test to the context of a stay pending arbitration, this court made the following observations, albeit in *dicta*: First, that both an order denying a stay and an order granting a stay of litigation pending arbitration have the "practical effect" of an injunction by either refusing to halt court proceedings or halting court proceedings pending arbitration, respectively. *Id.* at 506. And, second, that "denials—but not grants—of stays of litigation pending arbitration are appealable interlocutory orders, since only orders that frustrate (in contrast with facilitate) arbitration impose a sufficiently serious injury to justify an immediate appeal." *Id.* at 507. Specifically, the court reasoned that an order granting a motion to stay court proceedings pending arbitration was not appealable on an interlocutory basis for three reasons: 1) At least in principle, the party resisting arbitration agreed to arbitration at some previous time; 2) an arbitration award is not self-executing, such that a successful party must still go to court for final judgment to be entered at which point the party opposed to arbitration can challenge the enforcement of the award as a judgment; and 3) allowing a party to appeal from a stay of litigation pending arbitration would only increase the time and expense necessary to resolve the dispute, which undermines the entire purpose

of arbitration. *Id.*

Months after *Brandon* was decided this court decided *Koczak*, which contained *dicta* that conflicted with that of *Brandon*. *See Koczak*, 439 A.2d at 480 n.7 (emphasis added) (noting that the UAA prohibited the court from hearing an appeal of an order granting a motion to compel arbitration, but reasoning "*in the absence of the [UAA], certain orders affecting arbitration could be viewed as orders respecting injunctions, and thus appealable interlocutorily*"). Thus, after *Koczak* was decided there was *dicta* from this court suggesting that an order granting a motion to compel arbitration was not injunctive in nature (*Brandon*) and therefore unappealable, as well as *dicta* indicating that an order granting a motion to compel arbitration could potentially be considered an order respecting injunctions (*Koczak*) which therefore could be appealed interlocutorily.

Subsequently, in 1988, the Supreme Court overruled much of the federal case law on which *Brandon* was based. In *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287 (1988), Gulfstream sued Mayacamas for breach of contract in state court for failing to make payments on an aircraft that it had commissioned Gulfstream to build. *Id.* at 272-73. Without seeking to remove the case to federal court, Mayacamas filed its own action for breach of the

same contract against Gulfstream in federal court. *Id.* at 273. Gulfstream moved for a stay or dismissal of the federal court action pending resolution of its state case, but the court denied its motion. *Id.* The question before the Supreme Court was whether Gulfstream could appeal from the denial of the motion to stay or dismiss the case pending the outcome of the state case.

The Supreme Court reviewed the applicable law at the time, the so-called *Enelow-Ettelson* rule,[5] which held that orders granting or denying stays of proceedings at law on equitable grounds were automatically appealable as interlocutory orders. *Gulfstream Aerospace Corp.*, 485 U.S. at 288. The parties agreed that the breach of contract cause of action at issue in the case was traditionally brought at law, but disagreed as to "whether the stay of an action pending the resolution of similar proceedings in a state court is equitable in the requisite sense." *Id.* at 281. Rather than answer that question, however, the Supreme Court recognized the ever-increasing criticism of the *Enelow-Ettelson* rule and decided to overrule it. *Id.* at 287. Thus, the Court held that an order denying a motion to stay or dismiss an action when a similar suit is pending in state court was not automatically immediately appealable as an interlocutory order.

---

[5] This rule came from the cases of *Enelow v. New York Life Ins. Co.*, 293 U.S. 379 (1935), and *Ettelson v. Metropolitan Life Ins. Co.*, 317 U.S. 188 (1942).

*Id.*   However, relevant to the instant case, the Court also stated:

> This holding will not prevent interlocutory review of district court orders when such review is truly needed. Section 1292 (a)(1) will, of course, continue to provide appellate jurisdiction over orders that have the practical effect of granting or denying injunctions and have "serious, perhaps irreparable, consequence."

*Id.* at 287-88 (quoting *Carson*, 450 U.S. at 84) (internal quotation marks omitted).

Subsequently, federal courts have applied *Gulfstream* to orders staying or refusing

to stay litigation pending arbitration and have concluded that *Gulfstream* prohibits

an appeal from either type of order.[6]

Despite *Gulfstream* and its progeny, in 1989, this court extended and

formally adopted much of the *dicta* in *Brandon* in *Hercules*.[7]   The court

recognized that had *Brandon* been decided post-*Gulfstream*, the outcome would

---

[6]   *See Hercules*, 566 A.2d at 37 nn.13 & 14   (citing federal cases).

[7]   Neither the District nor the Council cite to this case in their briefs.   The District does cite to a case involving the same plaintiff, *Hercules & Company v. Beltway Carpet Service*, 592 A.2d 1069 (D.C. 1991).   In that case, this court held that a motion to dismiss on the basis that the parties had agreed to arbitration must be construed as a motion to stay and compel arbitration, and therefore, the denial of a motion to dismiss on the basis that the parties agreed to arbitration is immediately appealable as an order denying a motion to compel arbitration under the UAA.   *Id.* at 1072.

likely have been different because had the court followed federal case law and applied *Gulfstream*, it would likely have concluded that neither an order granting nor an order denying a stay pending arbitration was immediately appealable. *Hercules*, 566 A.2d at 37. Still, the division recognized that *Gulfstream* had not overruled *Brandon*, and that the court was bound by *Brandon*. *Id.* at 38. Thus, in *Hercules*, we explained:

> Although the appealability of a grant of a stay was not before the court, there is support in *Brandon*, albeit in *dictum*, for the conclusion that [the trial court's] order [granting a stay pending arbitration] is not subject to review pursuant to § 11-721 (a)(2)(A). . . . [W]e follow the dictum in *Brandon*, which is consistent with *Gulfstream*, and dismiss this portion of the appeal.

*Id.* at 38-39.

Thus, *Hercules* stands for the proposition that in general, a party cannot appeal from an order compelling arbitration.

**C. An order staying litigation and compelling a consumer to arbitrate with a commercial entity based on an arbitration clause contained in a contract of adhesion meets the *Carson* test and thus is injunctive in nature and can be appealed interlocutorily.**

However, this court has never considered whether an order compelling arbitration is appealable in the specific context at issue here, that is, where a consumer is compelled to arbitrate with a commercial entity pursuant to an arbitration clause contained in a (purported) contract of adhesion.[8] The narrow question before us is whether an order staying litigation and compelling a consumer to arbitrate pursuant to an arbitration clause contained in a form contract is appealable as an interlocutory order under § 11-721 (a)(2)(A).

Importantly, in passing the RUAA the D.C. Council explicitly conferred a right to appeal from an order granting a motion to compel arbitration,[9] and the

---

[8] "A contract of adhesion is defined generally as one imposed upon a powerless party, usually a consumer, who has no real choice but to accede to its terms." *Association of Am. Med. Colleges v. Princeton Review, Inc.*, 332 F. Supp. 2d 11, 16 (D.D.C. 2004) (internal quotation marks and citation omitted); *see also* ADHESION CONTRACT, Black's Law Dictionary (9th ed. 2009) ("A standard-form contract prepared by one party, to be signed by another party in a weaker position, usu. a consumer, who adheres to the contract with little choice about the terms.").

[9] *Compare* § 16-4317 (a)(1) [the UAA] ("For purposes of writing an appeal, the following orders shall be deemed final: [] An order denying an

(continued . . .)

legislative history suggests that this step was undertaken in an effort to provide consumers more protection where arbitration was entered into with a commercial entity by way of an adhesion contract. *See infra* at 19. Further, this court has recognized the potential for widespread use of adhesion contracts containing arbitration agreements to deprive consumers of any meaningful choice, which raises serious questions about the fairness of enforcing the terms of those contracts against consumers. *See infra* at 19-20. Thus, this panel, which remains bound by *Hercules*, but is called upon to rule in the wake of the RUAA, must now consider for the first time whether compelling a consumer to arbitrate a dispute with a commercial entity pursuant to an arbitration clause contained in a contract of adhesion has the practical effect of an injunction under *Carson*, such that we have jurisdiction to hear an interlocutory appeal of such an order pursuant to § 11-721 (a)(2)(A).

We are satisfied that applying the *Carson* test, an order compelling arbitration in the context of a consumer adhesion contract is injunctive in nature. First, as the court noted in *Brandon*, granting a stay pending arbitration does have

---

(continued . . .)
application to compel arbitration . . . .”) *with* § 16-4427 (a)(1) [the RUAA] (“An appeal may be taken from: [] An order denying or granting an order to compel arbitration; . . . .”).

the "practical effect" of enjoining the party opposing arbitration, in that it halts litigation and orders the parties to undergo arbitration. 439 A.2d at 506. We see no reason why the changes to our law since *Brandon* should affect that conclusion.

With respect to the second prong of the *Carson* test, today both the D.C. Council and this court recognize that there has been a significant increase in the use of arbitration clauses in consumer contracts of adhesion since *Brandon* and *Hercules* and that such clauses are being used to the detriment of consumers. Indeed, the D.C. Council's concern that consumers were being taken advantage of by being forced to submit to arbitration based on the terms of an adhesion contract entered into with a commercial entity was a motivating factor behind the decision to add several consumer-friendly provisions into the RUAA. *See* COMM. ON PUB. SAFETY & THE JUDICIARY, REP. ON BILL 17-50, at 2 (D.C. 2007) (explaining that "many businesses have found that mandatory arbitration is advantageous in consumer contracts where the business controls the choice of arbitrators, and can afford the arbitration process more easily than can the consumer"); *id.* (including "several consumer friendly amendments" in the RUAA because "as the use of arbitration has increased, the view of many is that the arbitration process has been slanted in the favor of business over consumers"). Thus, though this court could not discern a particular significant injury suffered by a party opposing arbitration at

the time *Brandon* and *Hercules* were decided, today the Council has developed a record that clearly recognizes that the injury suffered by a consumer who is compelled to arbitrate with a commercial entity pursuant to an arbitration clause in an adhesion contract is significant.

This court has also recognized that the policy that overwhelmingly favors arbitration[10] has been seriously called into question by the realization that all too often, arbitration agreements are included in the language of contracts of adhesion, which consumers must sign in order to make particular purchases. *See, e.g.*, *Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1122 n.13 (D.C. 2010) (remanding for the trial court to hold an evidentiary hearing and make factual findings as to the unconscionability of the arbitration agreement, in particular with respect to appellant's argument that she lacked meaningful choice because "[i]f every dealership in the region also imposes similar arbitration clauses in similar contracts of adhesion, their existence would not amount to reasonable choice. Indeed, according to our *amicus*, such clauses are nearly ubiquitous and it is not clear

---

[10] *See, e.g.*, *Friend v. Friend*, 609 A.2d 1137, 1139 (D.C. 1992) (citations omitted) (referencing "the well-established preference for arbitration when the parties have expressed a willingness to arbitrate. Federal and District of Columbia statutes "are in agreement on the issue of favoring arbitration when the parties have entered into a contract containing an arbitration clause").

whether Ms. Keeton had access to another dealer who would not insist on a similar contract containing a similar arbitration clause"). Contracts of adhesion are not, of course, negotiable, such that consumers are often forced into agreeing to arbitrate any claims arising out of the consumer transaction, thus forfeiting the option to resort to the courts. *See, e.g.*, *Moore v. Waller*, 930 A.2d 176, 182 (D.C. 2007) (citations omitted) (to prove that a contract is an adhesion contract, the party challenging the contract must demonstrate that "the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation and that the services could not be obtained elsewhere").

Further, like litigation, arbitration can be costly and time-consuming, and does not afford the consumer the same process as the courts. *See generally* Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 VAND. L. REV. 729 (2006). Finally, judicial review of arbitration agreements—including the substantive fairness of those agreements—is extremely limited, both at the trial court level as well as on appellate review. *Lopata v. Coyne*, 735 A.2d 931, 940 (D.C. 1999) (citations omitted) ("Judicial review of an arbitrator's decision is extremely limited, and a party seeking to set it aside has a

heavy burden.").[11]  Thus, we are satisfied that the current and frequent inclusion of arbitration clauses in consumer contracts of adhesion justifies our conclusion that a consumer compelled to arbitrate with a commercial entity pursuant to such a clause suffers significant injury within the meaning of *Carson*, such that an order compelling arbitration in this context operates as an order granting an injunction and necessitates our immediate, interlocutory review under § 11-721 (a)(2)(A). This is clearly a context in which, as the Supreme Court put it, interlocutory review is "truly needed."  *Gulfstream*, 485 U.S. at 287.

Finally, though today we choose not to forsake our precedent and follow the federal courts and the *Gulfstream* line of cases to hold that orders compelling arbitration are not appealable, we point out that our decision today is not incompatible with *Gulfstream*.  Though the Supreme Court took the opportunity in that case to overrule the "unworkable . . . arbitrary . . . and unnecessary" *Enelow-Ettelson* rule that provided for automatic review of any order staying or denying a stay of "legal" proceedings on an equitable basis, *Gulfstream*, 485 U.S. at 287, the Court clearly intended that "[s]ection 1292 (a)(1) [the federal analogue to D.C. Code § 11-721 (a)(2)(A)] [would] continue to provide appellate

_____

[11]  The potential grounds for setting aside an arbitration award are outlined by the statute, § 16-4423, which provides the very limited basis for vacating an
(continued . . .)

jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have serious, perhaps irreparable, consequence." *Id.* at 287-88 (internal quotation marks and citations omitted). For the reasons explained herein, we are satisfied that under circumstances where a consumer is claiming that the arbitration clause in a contract of adhesion is unconscionable, the (alleged) injury is serious enough to meet the second prong of the *Carson* test and thus, we have jurisdiction to consider an appeal under § 11-721 (a)(2)(A). We reserve judgment as to whether an appeal of a ruling compelling arbitration that does not emanate from a challenge to an arbitration clause in a contract of adhesion might lie in some other circumstance or whether § 16-4427 as applied in other contexts might violate § 206 (a)(4) of the Home Rule Act.

### III. Merits Analysis

Having concluded that we have jurisdiction to hear an interlocutory appeal from an order to compel arbitration and stay proceedings where the arbitration agreement appears in a contract of adhesion entered into by a consumer and a

---

(continued . . .)
arbitration award.

commercial entity, we now consider whether the record in this case is one in which appellate review is appropriate under the test set out above. Appellant contends that this court is required to remand the case for further proceedings as we did under similar facts in *Keeton*, because the trial court granted appellees' motion to compel arbitration without holding an evidentiary hearing or providing the parties an opportunity to develop the record to determine whether the arbitration agreement was unconscionable. We agree. Although the *Keeton* case involved a different procedural posture,[12] the factual similarities between *Keeton* and the present case convince us that this is a contract of adhesion and that appellant raised a triable issue of fact as to the unconscionability of the arbitration agreement. We see no appropriate basis for departing from that precedent in this case, and thus, we remand the case to the trial court to hold an evidentiary hearing and make factual findings as to the unconscionability of the arbitration agreement. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971); D.C. Code § 17-306 (2012 Repl.) ("The District of Columbia Court of Appeals may . . . remand the cause and . . . require

---

[12] The appeal in *Keeton* arose from the trial court's dismissal of the complaint with prejudice while compelling arbitration, a ruling this court recognized was an "unambiguously final" order. 987 A.2d at 1121. In contrast, the trial court's ruling in the present case granted appellees' motion to compel arbitration but stayed the case pending resolution of the arbitration, which—although not a final order—may nonetheless be subject to this court's jurisdiction as an interlocutory appeal where the arbitration agreement appears in a contract of adhesion, as explained in the jurisdictional analysis above.

such further proceedings to be had, as is just in the circumstances.").

In *Keeton*, the appellant, Ms. Keeton, brought suit against Easterns Auto and Wells Fargo after she defaulted on a vehicle loan that had required her to make loan payments totaling more than twice the fair market value of the car. 987 A.2d at 1120. Appellees filed a motion to dismiss and compel arbitration, which the trial court granted, dismissing the case with prejudice. *Id.* at 1121. Not only was the contract at issue an adhesion contract, *id.* at 1119, but the appellant had alleged sufficient facts tending to show that the contract was both procedurally and substantively unconscionable. For example, Ms. Keeton argued that the arbitration agreement was procedurally unconscionable because she lacked meaningful choice in that she could not merely go to another dealership to obtain financing without signing an arbitration agreement, and substantively unconscionable because the terms of the arbitration agreement, which "reserv[ed] some litigation avenues to Easterns while entirely barring Ms. Keeton from seeking judicial action" were substantively unfair. *Id.* at 1122-23. Therefore, noting that it was well-settled in this jurisdiction that a determination on the issue of unconscionability "calls for a strongly fact-dependent inquiry" and "an expedited evidentiary hearing," neither of which the trial court had conducted, we reversed and remanded the case with instructions that the trial court permit

discovery and hold an evidentiary hearing as to unconscionability of the arbitration agreement. *Id.* at 1123. Specifically, we ordered that a record be developed with respect to: "the significance of the imbalance of power in arbitrator selection given Easterns's status as a 'repeat player' in the arbitration system"; "the fact that the clause reserv[ed] some litigation avenues to Easterns while entirely barring Ms. Keeton from seeking judicial action"; and "the costs imposed on Ms. Keeton by the arbitration procedure and their impact on her ability to seek redress." *Id.*

As in *Keeton*, there are sufficient facts on the record from which it can be inferred that the contract in the present case was a contract of adhesion. In finding that the contract in *Keeton* was an adhesion contract, the court relied on the facts that "Ms. Keeton signed a Buyer's Order, a standardized-form contract with terms prepared in advance by Easterns." *Keeton*, 987 A.2d at 1121 n.2. The court noted "[t]here is no evidence that any of the terms were open to negotiation or were, in fact, negotiated." *Id.* Here, similar allegations are made by the appellant and those allegations are supported by evidence in the record before us. Appellant signed AIC's "Buyers Order" which contained set "terms and conditions" prepared in advance by AIC on their standardized forms which were automatically accepted

by the purchaser upon signing the purchase contract.[13]  Additionally, appellant contends (and appellee does not dispute) that he could not have negotiated any terms in the contract, as it was Mr. Ghasri, the AIC salesman, who structured the transaction and brought the completed contract to appellant to simply sign.  Thus, we are satisfied that this contract is a contract of adhesion.

Further, appellant alleges procedural and substantive unconscionability.[14] He particularly disputes the validity of the arbitration clause, raising substantial questions regarding whether the clause is unconscionable.  In *Keeton*, appellant alleged procedural unconscionability by asserting that she lacked meaningful choice in that she could not merely go to another dealership to obtain financing without signing a contract with an arbitration agreement.  *Id.* at 1121.  Appellant makes the same argument here, and Wells Fargo Bank concedes that "arbitration

---

[13]  Although appellant intended to enter the contract as a guarantor of a loan procured by Mr. Fadavi, the contract identifies appellant as the owner of the vehicle. Under these facts, appellant has standing to make the claim that the contract is unconscionable.

[14]  In light of appellant's exclusive reliance on *Wisconsin Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155 (Wisc. 2006) to support his argument in the trial court that the arbitration agreement he signed was unconscionable, we interpret appellant's argument to be that the contract he signed, which appellant alleged was a contract of adhesion, was both procedurally and substantively unconscionable.

clauses are an industry standard for automobile sales." As the court noted in

*Keeton:*

> If every dealership in the region also imposes similar arbitration clauses in similar contracts of adhesion, their existence would not amount to reasonable choice. Indeed, according to our *amicus*, such clauses are nearly ubiquitous and it is not clear whether Ms. Keeton had access to another dealer who would not insist on a similar contract containing a similar arbitration clause.

*Keeton*, 987 A.2d at 1122 n.13. Moreover, we have held that "the use of a

standardized form contract . . . is a fact substantially bearing on th[e] question" of

procedural unconscionability, and "where one is employed [] it is important for the

court to consider whether the seller identified and explained the terms of the

contract, particularly those which might be viewed as unusual or unfair." *Bennett*

*v. Fun & Fitness*, *Inc.*, 434 A.2d 476, 481 (D.C. 1981) (citing *Williams v.*

*Walker-Thomas Furniture Co.*, 350 F.2d 445, 450 (D.C. Cir. 1965).

As *Keeton* states, "our well-settled unconscionability standard calls for a

strongly fact-dependent inquiry" and requires a court to conduct "an expedited

evidentiary hearing when parties dispute the validity of the arbitration clause."

*Keeton*, 987 A.2d at 1119, 1121-22. There is no indication that the trial court here

undertook any such assessment despite appellant's allegations in the complaint that

Mr. Ghasri, simply brought the completed contract to the appellant for him to sign while he was on his shift at work, rather than in a setting where he could take a moment to review and discuss the agreement.[15]

Appellant's assertion of a triable issue of fact pertaining to the substantive unconscionability of the arbitration agreement is also supported by the record. For example, the trial court failed to consider how certain provisions in this arbitration agreement reserve some litigation avenues to one party while "barring [another] from seeking judicial action." *Keeton*, 987 A.2d at 1122-23. The arbitration agreement states that the parties "prefer to resolve their disputes through arbitration, except that the Dealer . . . may proceed with Court action in the event the Purchaser fails to pay any sums due under the Buyers Order or RISC." This exception is carved out for AIC despite the provision subjecting the parties to "binding arbitration" under "all disputes" arising under "case law, statutory law, and all other laws." Additionally, the trial court erroneously found that the agreement "did not preclude a class action," when in fact the agreement states that

---

[15] In fact, it appears that appellant either did not read the contract or did not understand it, as the complaint alleges that he was not aware that the contract established he was the owner of the vehicle until after Mr. Ghasri delivered the car to Mr. Fadavi and Mr. Fadavi went to the D.C. Department of Motor Vehicles and could not obtain a parking permit for his residence because appellant, the owner of the vehicle, lived in a different zone.

"by entering into this Arbitration Agreement the parties are waiving their right to bring or participate in any class action in court or through arbitration (this is referred to below as the 'class action waiver')." Appellant had even brought to the court's attention various cases in which other courts found such clauses barring class actions substantively unconscionable.

In sum, we find that this is a contract of adhesion and that appellant raised a triable issue of fact as to the unconscionability of the arbitration agreement given the similarities between *Keeton* and this case. The manner in which the trial court summarily granted appellee's request to compel arbitration, on the basis of the limited pleadings, without permitting any discovery or conducting an evidentiary hearing to develop the record with respect to unconscionability, makes it impossible for us to decide whether this arbitration agreement can be enforced. The unconscionability standard demands a more developed record, and just as in *Keeton*, "the court's ruling was premature at best." *Keeton*, 987 A.2d at 1122. Accordingly, the judgment is reversed and the case is remanded.

*Reversed and remanded.*