*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CV-896

ADORIA DOUCETTE, APPELLANT,

v.

NEUTRON HOLDINGS, INC., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2020-CA-005118-B)

(Hon. Hiram E. Puig-Lugo, Trial Judge)

(Argued November 16, 2022                    Decided January 26, 2023)

*Anthony Graham, Sr.* for appellant.

*John A. Nader* for appellee. *Russell S. Drazin* was on the brief for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and GLICKMAN,[*] *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant Adoria Doucette sued appellee

Neutron Holdings, Inc. (doing business as Lime), alleging that she was injured in a

---

[*] Judge Glickman was an Associate Judge of the court at the time of argument. He began his service as a Senior Judge on December 21, 2022.

scooter accident as a result of Lime's negligence. Ms. Doucette challenges an order compelling her to arbitrate her claim. We affirm.

## I. Factual and Procedural Background

The complaint alleges that Ms. Doucette rented one of Lime's electric scooters, the scooter's brakes failed, Ms. Doucette collided with a person riding a bicycle, and Ms. Doucette fractured her leg and suffered other injuries. The complaint further alleges that the collision was caused by Lime's negligence.

Lime filed a motion to compel arbitration, relying on an arbitration agreement that Ms. Doucette accepted when she rented the scooter. Ms. Doucette opposed the motion, arguing that the arbitration agreement is unconscionable and that the trial court had the authority to decide that issue. Specifically, Ms. Doucette argued that the arbitration agreement is a contract of adhesion and that various terms in the contract are so unreasonable as to render the contract unenforceable.

The trial court ruled that the arbitration agreement is not unconscionable. Applying factors set out in *Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1123 (D.C. 2010), the trial court explained that the arbitration agreement binds both parties, the

arbitration would be conducted by a neutral party, and the costs of arbitration would depend on the outcome of the arbitration. *See id.* (listing issues "central to a proper determination of unconscionability," including "the significance of the imbalance of power in arbitrator selection . . . , the fact that the [arbitration] clause reserves some litigation avenues to [the corporate entity] while entirely barring [the consumer] from seeking judicial action, as well as the costs imposed on [the consumer] by the arbitration procedure and their impact on [the consumer's] ability to seek redress"). The trial court therefore stayed Ms. Doucette's suit and granted the motion to compel arbitration.

## II.  Appellate Jurisdiction

The parties agree that we have jurisdiction to review the trial court's order compelling arbitration. *See* D.C. Code § 16-4427(a)(1) (authorizing appeal from order granting motion to compel arbitration); *Woodroof v. Cunningham*, 147 A.3d 777, 780-87 (D.C. 2016) (holding that § 16-4427 permits appeals of orders compelling arbitration). We agree, but we briefly address one complication. The arbitration agreement in this case provides that the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., will govern the arbitrability of disputes arising out of the contract between Ms. Doucette and Lime. The FAA generally does not permit

immediate appeal from orders compelling arbitration. 9 U.S.C. § 16(b)(2) (precluding interlocutory appeals from orders "directing arbitration to proceed under" 9 U.S.C. § 4). We conclude, however, that the question of appealability is governed by the law of this jurisdiction rather than by § 16(b)(2). Section 16(b)(2) refers to orders directing arbitration to proceed under 9 U.S.C. § 4. Section 4 refers to proceedings before a "United States district court." This action was filed in Superior Court, not federal district court, so the FAA provisions relating to appealability by their terms do not apply to this proceeding. *See, e.g.*, *Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 620, 624-29 (Md. 2001) (appealability of order compelling arbitration governed by Maryland procedural rules, not by FAA) (citing cases).

## III. Unconscionability

Ms. Doucette renews her argument that the arbitration agreement is unconscionable. We affirm the trial court's contrary holding.

We note a threshold issue. Ms. Doucette argues that the question whether the arbitration agreement is unconscionable was for the trial court to decide. Lime argues that that question should have been left to the arbitrator to decide. We need

not resolve that dispute. The trial court resolved the question of the unconscionability of the arbitration agreement favorably to Lime, and we uphold that ruling. Lime has not asked us to set aside that ruling.

A party may avoid enforcement of a contract that is unconscionable because the contract is "oppressive and plainly one-sided." *Simon v. Smith*, 273 A.3d 321, 331 (D.C. 2022). "Unconscionability of a contract is ultimately a legal conclusion, dependent on proof and findings of facts supporting such a determination." *Id.* We defer to the trial court's findings of fact unless they are clearly erroneous or unsupported by the record, but "we review de novo the trial court's ultimate holding that a contract is unconscionable." *Id.*

A contract is unconscionable if there is "an absence of meaningful choice on the part of one of the parties" (procedural unconscionability) and "the contractual terms are unreasonably favorable to the other party" (substantive unconscionability). *Smith*, 273 A.3d at 331 (internal quotation marks omitted). "Generally, we require that the party seeking to avoid the contract prove both" procedural and substantive unconscionability. *Id.* "In an egregious situation, however, a showing of one or the other may suffice." *Id.* at 331 n.15 (brackets and internal quotation marks omitted).

The trial court in this case focused its inquiry on the potential unconscionability of the agreement to arbitrate rather than of the contract as a whole. We agree with the trial court's focus, which Ms. Doucette does not appear to challenge directly. *Cf., e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010) (under FAA, valid agreement to arbitrate is enforceable even if other parts of contract may be unconscionable).

We also agree with the trial court that the agreement to arbitrate in this case is not unconscionable. As the trial court noted, both parties are equally obligated to arbitrate their claims, with no avenues for litigation reserved to Lime alone; the arbitration would be conducted by a neutral entity; and the cost of the arbitration would be borne by the losing party, not specifically by Ms. Doucette. For the same reasons, we conclude the arbitration agreement is not unconscionable. *Cf., e.g.*, *Purvis v. Mar-Jac Poultry MS, LLC*, 345 So. 3d 1223, 1230-31 (Miss. Ct. App. 2022) (agreement to arbitrate was not unconscionable where "all terms in the arbitration clause were equally applicable to both parties" and no party "had any advantage or disadvantage in the arbitration process"); *Metzgar v. Star Pontiac, Inc.*, 75 Pa. D. & C.4th 114, 119-20 (Ct. Comm. Pl. 2005) (agreement to arbitrate was not unconscionable where agreement required both parties to arbitrate, did not impose excess costs on either party, and was "neutral on its face"); *Phillips v. Neutron*

*Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at \*6 (N.D. Tex. Oct. 2, 2019) (enforcing identical arbitration agreement); *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 10-12 (D.D.C. 2021) (finding similar arbitration agreement enforceable under FAA). *See generally AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011) (discussing general policy against judicial interference with validly entered arbitration agreements, even if agreements are contained in consumer contracts of adhesion).

We are not persuaded by Ms. Doucette's contrary arguments. Primarily, Ms. Doucette focuses on general provisions of the contract, not those specifically addressing arbitration. For example, Ms. Doucette points to the contract's prohibition of class-action suits, Lime's reservation of rights to not offer refunds except in its sole discretion, Lime's release of itself and contractors from damages, the contractual cap on damages, and Lime's ability to unilaterally terminate the consumer's right to use Lime's services. Whether parts of the contract not related to the agreement to arbitrate are unconscionable is a question that can be decided by the arbitrator pursuant to the parties' enforceable agreement to arbitrate. *See Rent-A-Center*, 561 U.S. at 68-70 (parties may validly agree to arbitrate questions such as unconscionability, and "a party's challenge to another provision of the contract, or

to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate").

Ms. Doucette makes several arguments that apply more directly to the agreement to arbitrate, but we are not persuaded by those arguments. First, Ms. Doucette argues that the agreement to arbitrate is part of a contract of adhesion. *See generally, e.g.*, *Andrew v. Am. Imp. Ctr.*, 110 A.3d 626, 633 n.8 (D.C. 2015) ("A contract of adhesion is defined generally as one imposed upon a powerless party, usually a consumer, who has no real choice but to accede to its terms.") (internal quotation marks omitted). The trial court ruled that the contract at issue in this case is a contract of adhesion, and we assume the correctness of that ruling for purposes of this decision. A contract is not unconscionable, however, simply because the contract is one of adhesion. *See, e.g.*, *Andrew*, 110 A.3d at 636-39 (remanding for evidentiary hearing on question of unconscionability after determining that agreement at issue was contract of adhesion).

Second, Ms. Doucette argues that the arbitration agreement states the FAA governs the agreement but does not provide a copy of the FAA or explain what the FAA means. The lack of further detail or elaboration on this choice-of-law provision does not render the agreement unconscionable, especially when information about

the FAA is easily obtainable. *Cf. Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010-11 (D.C. 2002) (holding that forum-selection clause in consumer agreement was enforceable when reasonably communicated to user, and explaining that notice need not explain "possible jurisprudential consequences of a forum selection clause").

Third, the arbitration agreement requires Ms. Doucette to bring a claim within one year, rather than permitting suit under the otherwise applicable statute of limitations, which Ms. Doucette contends would be three years. We hold that this time limit does not make the arbitration agreement as a whole unconscionable. Time limits can render arbitration agreements unconscionable if the limits are "clearly unreasonable and unduly favorable" to the drafter. *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 202 (3d Cir. 2010) (finding five-day time limit to preserve opportunity to arbitrate substantively unconscionable) (internal quotation marks omitted). A number of courts have found a time limit of one year in an arbitration agreement to be reasonable. *See, e.g.*, *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F. Supp. 3d 725, 736 (E.D. Pa. 2020) (citing cases); *Curtis v. Marino*, 201 A.D.3d 584, 585 (N.Y. App. Div. 2022) ("The contractual shortening of the statute of limitations . . . to one year is inherently reasonable.") (internal quotation marks omitted; citations omitted). *See generally Ord. of United Com. Travelers of Am. v.*

*Wolfe*, 331 U.S. 586, 608 (1947) (noting that parties may contract for shorter period to bring action than provided by applicable statute of limitations, as long as that period is "reasonable").

There are decisions finding a time limit of a year to be unconscionable in at least some circumstances, for example where the time limit conflicted with a longer statute of limitations provided by a remedial statute. *See, e.g.*, *Mills v. Facility Solutions Grp.*, 300 Cal. Rptr. 3d 833, 854 (Ct. App. 2022) (citing cases involving claims arising under wage and labor laws); *Pinela v. Neiman Marcus Grp., Inc.*, 190 Cal. Rptr. 3d 159, 182 (Ct. App. 2015) ("Where . . . arbitration agreements undermine statutory protections, courts have readily found unconscionability.") (internal quotation marks omitted). Ms. Doucette has not relied on such cases, however, and the rationale of such cases does not appear to extend to common-law claims like Ms. Doucette's that are not brought under a specific remedial statute. In light of the foregoing, we conclude that the time limit in the agreement does not render the agreement to arbitrate as a whole invalid. To be clear, we do not decide the related but distinct question whether the time limit itself is enforceable; we leave that issue to the arbitrator if the issue is raised in that forum. *Cf., e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 43-44 (1st Cir. 2006) (leaving to arbitrator question of enforceability of time limit in arbitration agreement).

Finally, Ms. Doucette contends that the arbitration agreement is unconscionable because the agreement denies Ms. Doucette the rights to have a trial court resolve her claims and to appeal from that ruling, instead substituting a decision by an arbitrator subject to very limited judicial review. Those consequences, however, are intrinsic features of arbitration. District of Columbia law permits arbitration agreements and requires their enforcement when valid, subject to very limited judicial review. D.C. Code § 16-4401 et seq. That legislatively established system cannot be invalidated under the common-law doctrine of unconscionability. *See Archie v. U.S. Bank, N.A.*, 255 A.3d 1005, 1015 (D.C. 2021) (unconscionability is common-law defense to enforcement of contracts); *D.C. Pub. Emp. Rels. Bd. v. Fraternal Ord. of Police*, 987 A.2d 1205, 1209 (D.C. 2010) (discussing District of Columbia's "clear policy in favor of enforcing arbitration agreements"); *cf. Fla. Holdings III, LLC v. Duerst ex rel. Duerst*, 198 So. 3d 834, 843 (Fla. Dist. Ct. App. 2016) (rejecting claim of unconscionability that "boils down to a quarrel with two standard features of arbitration—the fact that it involves more limited discovery than civil litigation and the fact that it affords more limited rights of judicial review than civil litigation").

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*