COLUMBIA REALTY VENTURE,
Petitioner,

v.

DISTRICT OF COLUMBIA HOUSING
RENT COMMISSION, Respondent.

CALIFORNIA HOUSE PARTNERS, LTD.,
Petitioner,

v.

DISTRICT OF COLUMBIA HOUSING
RENT COMMISSION, Respondent.

Nos. 9586, 9657, 9685 and 10022.

District of Columbia Court of Appeals.

Dec. 16, 1975.

Eric Von Salzen, Washington, D.C., with James D. Moyer, Washington, D.C., in No. 9586 and with Martin Klepper, Washington, D.C. in No. 10022, for petitioners.

C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, Richard W. Barton and David P. Sutton, Asst. Corp. Counsels, Washington, D.C., for respondent.

Before FICKLING,* GALLAGHER and NEBEKER, Associate Judges, in Chambers.

NEBEKER, Associate Judge:

The petitioners in these four cases seek direct review of orders of the District of Columbia Housing Rent Commission. The petitioners allege that their claims so clearly warrant relief that this court should summarily reverse the orders of the Rent Commission. *See Ashe v. Robinson,* 146 U.S.App.D.C. 220, 222, 450 F.2d 681, 683 (1971), quoting *United States v. Allen,* 133 U.S.App.D.C. 84, 85, 408 F.2d 1287, 1288 (1969). The respondent Housing Rent Commission contends in reply that this court is without jurisdiction to review the orders of the Housing Rent Commission at this stage in the litigation. Since we agree with the Housing Rent Commission that this court is without jurisdiction, the petitions for review must be dismissed.

On November 21, 1973, Congress enacted the Rent Control Act of 1973. D.C. Code 1974 Supp., § 45–1621 *et seq.* This Act granted to the District of Columbia Council authorization to stabilize rents in the District. The Act also authorized the Council to establish a Housing Rent Commission to carry out and enforce any rules established by the Council. The Act specified that increased costs incurred by a landlord could be passed on to tenants. Pursuant to this Act, the Council adopted regulations imposing a moratorium on rent increases on May 31, 1974. On the date of expiration of this moratorium, the Council established a scheme of rent regulations. Included were the establishment of a Housing Rent Commission and the authorization of the Commission to increase rents in instances of landlord hardship and increased operating costs. The Act had a one-year life span. D.C.Code 1974 Supp., § 45–1627.

The petitioner in Nos. 9586, 9657 and 9685, claiming that it should be allowed to pass the increased costs of operating three of its properties through to the tenants of those properties, filed applications for rent increases with the Commission. The Commission initially refused to entertain any of the applications. Rather, it informed the petitioner, by means of form letters, that the applications would not be processed within the 60 days specified in the Rent Control Regulations due to "the extremely limited resources available" to the Commission. The Commission outlined three alternatives available to the petitioner. The

---

* Judge Fickling did not participate in the disposition of these petitions.

petitioner could seek relief in the Superior Court 60 days from the date of filing of the application in question; the petitioner could seek a written waiver of the 60-day time limit from each of its affected tenants; or, the petitioner could resubmit an application with a new 60-day period to be computed from the date of refiling. In Nos. 9586 and 9685, petitioner seeks review of the Rent Commission's refusal to grant a hearing on its applications. In No. 9657, the petitioner did refile its application and was granted a hearing. The hearing examiner found the petitioner's request for a hardship increase to be fully justified and, on May 15, 1975, 50 days after the petitioner had refiled its application, ordered that the rents of apartments in the building in question be raised to compensate the petitioner for increased costs incurred by it. On May 21, 1975, the Housing Rent Commission issued an order revealing that it had passed a resolution while petitioner's request was pending whereby any order of a hearing examiner which was not served upon the parties and the Commission within 45 days of the filing of the request would be void. Consequently, the Commission voided the hearing examiner's order. The petitioner seeks direct review of the Commission's action in vacating the hearing examiner's order.

In No. 10,022, the petitioner filed with the Commission an application requesting that the petitioner be allowed to increase the rents charged in its apartment building so as to ensure a "return on investment"

of 8.77%. The hearing examiner denied the full increase sought by the petitioner, but did grant the petitioner a rent increase sufficient to yield an 8% return. The Commission, on September 4, 1975,[1] affirmed the decision of the hearing examiner. The petitioner seeks direct review by this court of the Commission's decision.

The District of Columbia Administrative Procedure Act (hereafter DCAPA) vests jurisdiction in this court to review orders and decisions of agencies of the District of Columbia government. See D.C.Code 1973, § 1–1510. When the DCAPA was passed in 1968, certain administrative bodies were specifically excluded from the review provisions of the Act.[2] Congress, in 1973, similarly chose to exclude the Housing Rent Commission from the compass of the DCAPA since it vested the Superior Court with jurisdiction over the Rent Commission. See D.C.Code 1974 Supp., § 45–1625.

■ The rent control bill leading to the Rent Control Act here under consideration provided that proceedings before the Housing Rent Commission would "be accorded 'contested case' treatment under the District of Columbia Administrative Procedure Act".[3] Delegate Fauntroy, the author of the bill, emphasized this point during his testimony before the subcommittee considering the bill. In answer to a question asked by Congressman Mazzoli, Delegate Fauntroy replied that review of decisions of the Housing Rent Commission would properly lie in the D.C. Court of Appeals.[4]

---

1. The Commission was still in existence on this date, despite the expiration of the Rent Control Act of 1973, as a result of the District of Columbia Council's action in extending the regulations passed pursuant to the Rent Control Act. See D.C. Act No. 1–35 (July 25, 1975).

2. District of Columbia Administrative Procedure Act, Pub.L. No. 90–614, § 11, 82 Stat. 1203, 1209 (1968) (D.C.Code 1969 Supp., § 1–1510). The Act as passed in 1968 excluded the Board of Zoning Adjustment, the Commission of Mental Health, the Public Service Commission, the Redevelopment Land Agency, and the Zoning Commission. Subse-

quently these agencies were included in the review provision. See D.C.Code 1973, §§ 1–1510 and 11–722.

3. H.R. 4771, 93d Cong. 1st Sess. 6–7 (1973) (as introduced by Delegate Fauntroy and reprinted in Hearings on H.R. 4771 Before the Subcomm. on Labor, Social Services, and the International Community of the House Comm. on the District of Columbia, 93d Cong., 1st Sess. 11–12 (1973)).

4. Hearings on H.R. 4771 Before the Subcomm. on Labor, Social Services, and the International Community of the House Comm. on the District of Columbia, 93d Cong., 1st Sess. 17 (1973).

Despite Delegate Fauntroy's recommendation that the judicial review procedures of the existing DCAPA be followed, the Act as passed vests the Superior Court, and not this court, with jurisdiction to entertain petitions for review of Housing Rent Commission decisions. It is significant that the provision giving the Superior Court jurisdiction over Rent Commission decisions was added to the Rent Control Bill while the District of Columbia Self-Government and Governmental Reorganization Act was being considered by the House. That Act specifically recognized the jurisdiction of this court to review orders and decisions of agencies of the District of Columbia "to the extent provided by law". D.C.Code 1975 Supp., Title 11 App. § 431(a).[5] It is apparent that Congress, by vesting review of Rent Commission decisions in the Superior Court, intended that the review provisions of the DCAPA not apply to the Housing Rent Commission. Rather, in accordance with the general equity powers recently granted to the Superior Court by D.C.Code 1973, § 11-921, and reaffirmed by section 431(a) of the Home Rule Act, Congress placed authority to review Rent Commission actions in the Superior Court.

This type of equitable review of administrative action is well recognized in judicial history. As long ago as 1902, the Supreme Court recognized that trial courts have the power to grant equitable relief to persons aggrieved by the action of an administrative agency when such action is without the authorization of law or is in contravention of law. *American School of Magnetic Healing v. McAnnulty,* 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90 (1902). In 1924 the Supreme Court decided that a bill in equity could properly be used as a means to review the actions of the rent commission then in existence in the District of Columbia. *Chastleton Corporation v. Sinclair,* 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924). The use of the equity power to review the actions of administrative agencies has received the continuing support of the Supreme Court. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Rusk v. Cort,* 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962); *Stark v. Wickard,* 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); *Shields v. Utah Idaho Central R.R.,* 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111 (1938). The continual use of the equity power of the courts has resulted in the strengthening and broadening of such power as a form of judicial review. In speaking of the federal courts' use of the equity power, Professor Davis has remarked that the equity power has moved away from its historical foundations and has become a "general-utility remedy for use whenever no other form of review proceeding is clearly indicated". Davis, Administrative Law Treatise § 23.04 (1958). Professor Davis has also noted that in the state courts the equity power has evolved into an important and essential remedy against administrative abuse. *Id.,* § 24.05.

■. To a large extent, the ability of the courts to use their equity power to review administrative decisions is founded on the constitutional basis of the due process clause. If an agency acts without the authorization of law or in contravention of law, it deprives the party whose conduct is being regulated of his property without due process of law. It is a function of the

---

5. Examples of laws providing for direct review by this court of administrative action are the DCAPA, D.C.Code 1973, § 1-1510; the District of Columbia Court Reorganization Act of 1970, D.C.Code 1973, § 11-722; and the District of Columbia Unemployment Compensation Act, D.C.Code 1975 Supp., § 46-312. Decisions of the Unemployment Compensation Board were directly reviewable in the Superior Court beyond the date of the adoption of the District of Columbia Self-Government and Governmental Reorganization Act. Act of August 28, 1935, ch. 794, § 12, 49 Stat. 953 (D.C.Code 1973, § 46-312). Statutory authority to review decisions of the Board was not granted to this court until December 7, 1974. D.C.Code 1975 Supp., § 46-312.

courts to see that the Constitution is being followed and if a court determines that an agency through its improper action is depriving a person of his property without due process of law, then it is incumbent upon that court to correct the improper action through the use of the equity power. This principle has been succinctly stated in another recently decided rent control case:

Where a party claims that a statute is unconstitutional as applied, it is the function of the courts to grant him the opportunity to be heard. For, as Mr. Justice Douglas said, dissenting in part in *Lindsey v. Normet*, 405 U.S. 56, 84, 92 S.Ct. 862, 880, 31 L.Ed.2d 36, 57:

" . . . due process entails the right 'to sue and defend in the courts' a right we have described as 'the alternative [of] force' in an organized society".

[*Housing and Development Administration of the City of New York v. Community Housing Improvement Program, Inc.*, 374 N.Y.S.2d 520 (Civil Court of the City of New York, Sept. 9, 1975).]

By specifically vesting the Superior Court with jurisdiction to review rent commission decisions, Congress gave statutory recognition to the authority of a trial court to use its equity power in the rent control field.

Nor can it be said that the congressional action in removing the Housing Rent Commission from the scope of the review provisions of the DCAPA is without a rational basis. In the *Chastleton Corporation* case, Justice Holmes called the use of a trial court's equity power to review a rent commission's decision "the natural and best way of settling the parties' rights." 264 U.S. at 547, 44 S.Ct. at 406. We conclude that the nature of rent control administra-

tion (*e.g., Apartment and Office Building Association of Metropolitan Washington v. Washington*, D.C.App., 343 A.2d 323 (1975)) is such that a court of general jurisdiction is better able to perform initial review than an appellate court.[6]

■■ Since Congress intended that the Rent Commission not be included within the compass of the review provisions of the DCAPA and that the Superior Court rather than this court should review the actions of the Commission, it is incumbent upon us to hold that this court is without jurisdiction to review orders and decisions of the Commission under section 1–1510 of the DCAPA and that review thereof is in the Superior Court where it would have been even without so providing in section 45–1625, *supra*. We must therefore dismiss the petitions in Nos. 9586, 9657 and 9685.

■ As to the petition filed in No. 10,022, we observe that the Self-Government Act, D.C.Code 1975, Supp., § 1–147(4), leaves the Council without authority to provide for judicial review of the Rent Commission's decisions. The limitation was correctly recognized since the rent control extension covering this case[7] did not purport to provide for judicial review, but rather implicitly acknowledged that those adversely affected could seek review in the Superior Court even though the express provision in the 1973 Act providing for Superior Court review had expired. Consequently, we hold that the petitioner in No. 10,022 had a right under section 11–921, *supra*, to seek review in the Superior Court and that it was not left without a remedy upon expiration of the express review provision. That petition must also be dismissed.

*So ordered.*

6. Moreover, Congress obviously took this same view when it rejected Delegate Fauntroy's review proposal. Thus, we do not perceive that the DCAPA dictates a contrary result.

7. *See* note 1, *supra*.