**DISTRICT OF COLUMBIA, Appellant,**

v.

**George SULLIVAN, et al., Appellees.**

**No. 80–747.**

District of Columbia Court of Appeals.

Argued March 6, 1981.

Decided Oct. 2, 1981.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, Washington, D.C., at the time the motion for summary affirmance was filed, and David P. Sutton, Acting Deputy Corp. Counsel, Washington, D.C., were on the motions, for appellant.

No appearance for appellees.

Iverson O. Mitchell III, Washington, D.C., was on the motion for summary affirmance and in opposition to the motion for summary reversal, as amicus curiae.

Before NEWMAN, Chief Judge, and KERN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

On June 27, 1978, the District of Columbia Council (the Council) enacted the Traffic Adjudication Act of 1978 (the Act or the TAA).[1] The legislation was signed by the Mayor on July 1, 1978, and transmitted to

---

1. D.C.Code 1980 Supp., § 40–1101, *et eq.* (Traffic Adjudication Act of 1978, D.C.Law 2–104, D.C.Reg. 1275 (1978)).

Congress for the 30–day review mandated by § 1–147(c)(1) of the District of Columbia Self-Government and Governmental Reorganization Act (the Home Rule Act).[2] It became effective as D.C. Law 2–104 at the end of that 30–day period.

In the present case the government alleged traffic violations against each appellee.[3] In the past, such violations would initially have been presented in the Superior Court as criminal offenses.[4] However, under the TAA, the cases were treated administratively.[5] A hearing examiner found appellees guilty of the respective violations and each decision was affirmed by the Appeals Board. As provided by the TAA, each appellee then filed an "application for the allowance of an appeal in the Superior Court." The applications were consolidated for joint review.

The Superior Court dismissed appellees' petitions for lack of jurisdiction ruling that, because the decisions of the hearing examiners and the Appeals Board were orders in contested cases, review was exclusive, to the Court of Appeals, D.C.Code 1978 Supp., § 1–1510 and D.C.Code 1973, § 11–722. The presiding judge further observed that under D.C.Code 1978 Supp., § 1–147(a)(4)[6] the Council has no authority to "withhold from a party aggrieved in a contested case a

right of direct review by the D.C. Court of Appeals."

The District of Columbia filed a motion for summary reversal. Oral argument was heard on the motion for summary reversal and amicus curiae's motion for summary affirmance. For the reasons which follow, we hold that the Superior Court does have jurisdiction over appeals under the TAA. Accordingly, we reverse and remand.

I

The threshold issue for our consideration is whether the TAA is a valid enactment in light of § 1–147(a)(4), which prohibits the Council from legislating with regard to the organization and jurisdiction of the District of Columbia courts. The Traffic Adjudication Act of 1978 was adopted "to establish a uniform and more expeditious system and [to] continue to assure an equitable system for the disposition of traffic offenses."[7] It was the intent of the Council "to decriminalize and to provide for the administrative adjudication of certain violations" of motor vehicle and traffic regulations.[8]

The TAA does not purport to change the criminal jurisdiction or the specific responsibilities of the Superior Court[9] or the Court of Appeals.[10] After enactment of the

---

2. D.C.Code 1978 Supp., § 1–121 (District of Columbia Self-Government and Governmental Reorganization Act, Pub.L.No. 93–198, 87 Stat. 774 (1973)).

3. Appellee Sullivan was charged with failure to give full time and attention while operating a motor vehicle; appellee Sheperd was charged with making a left turn from the wrong lane and changing lanes without caution; and appellant Hemby was charged with passing a red light.

4. D.C.Code 1973, § 40–603(i) provides, "All prosecutions for violations of this chapter ... and this act or regulations made and promulgated under authority of this chapter shall be in the Superior Court...." ·

5. The District of Columbia Administrative Procedure Act (the DCAPA), D.C.Code 1978 Supp., § 1–1501, et seq.

6. Section 1–147(a)(4) provides that "[t]he Council shall have no authority to ... enact any act, resolution, or rule with respect to any

provision of title 11 (relating to organization and jurisdiction of the District of Columbia courts)." Section 1–147(a)(4) was passed as part of the Home Rule Act, supra note 2 at 2.

7. D.C.Code 1980 Supp., § 40–1101.

8. Id.

9. Under D.C.Code 1973, § 11–923(b)(1) "the Superior Court has jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia."

10. D.C.Code 1973, § 11–721(a)(1)–(c), provides in pertinent part that the Court of Appeals has jurisdiction of appeals from—all final orders and judgments of the Superior Court ... as of right ... [except] judgments in the Criminal Division of that court where the penalty imposed is a fine of less than $50 for an offense punishable by imprisonment of one year or less or by fine of not more than $1,000, or both, shall be by application for the allowance of an appeal....

TAA, the Superior Court's trial level jurisdiction of criminal cases remains intact, as does the appellate jurisdiction of this court. What has changed is that certain violations no longer constitute *criminal* offenses.

That the Council has the authority to classify an act as a crime, or to decriminalize certain behavior, is clear. Even before the Home Rule Act, the Council enjoyed a broad delegation of police power from Congress. D.C.Code 1967 & 1973, § 1–226 provided that the District government may " 'make and enforce all such reasonable and usual police regulations . . . as [it] deem[s] necessary for the protection of lives, limbs, health, comfort and quiet of all persons . . . .' " *Firemen's Insurance Company of Washington, D.C. v. Washington,* 157 U.S. App.D.C. 320, 324, 483 F.2d 1323, 1327 (1973).

Significantly, in *McIntosh v. Washington,* D.C.App., 395 A.2d 744 (1978), this court upheld the authority of the Council to enact a Firearms Act, recognizing that any limitation on such actions by the Council in the Home Rule Act was merely a time constraint.[11] Rejecting the notion that the language of § 1–147(a)(7) barred the Council from acting with respect to the subject matter of any provision of Title 22 the court held that, "[a]cceptance of this argument would be to hold the Council powerless to act in many areas which have traditionally fallen within the local regulatory domain." *McIntosh, supra* at 751.

At issue in *McIntosh* was a two-year moratorium, but it is significant for our purposes that after such time the Council has authority to "make changes, modifications, or amendments in local criminal statutes," *id.* The court in *McIntosh* looked to the statement of one of the Congressional sponsors that: " 'The Conference Committee . . . agreed to transfer authority to the

Council to make changes in Titles 22, 23 and 24 of the District of Columbia Code, effective January 2, 1977,' " *id.* In *District of Columbia v. Washington Home,* D.C.App., 415 A.2d 1349, 1351 (1980), this court cited *McIntosh* with approval noting that, "[i]n exercising our review function, we have acknowledged that 'the core and primary purpose of the Home Rule Act . . . was to relieve Congress of the burden of legislating upon essentially local matters' . . ." and *our role is to interpret the Home Rule Act* "with a central focus: the intent of Congress," *id.* at 1351 (footnote omitted). *See* Newman and DePuy, *Bringing Democracy to the Nation's Last Colony: The District of Columbia Self-Government Act,* 24 Am.U.L. Rev. 537 (1975).

It is clear from the legislative history of the Home Rule Act that § 1–147(a)(4) was enacted not to prohibit action with regard to specific offenses but, rather, to give the newly enacted District of Columbia Court Reorganization Act of 1970[12] an opportunity to prove its effectiveness. In the full committee markup, Congressman Adams explained that

> the purpose of this [provision] was the very strong argument made by the court and supported by *members of the bar* . . . that the Reorganization Act had just gone into effect. Therefore, the *structure* of the courts should have an opportunity for that Reorganization Act to be completely carried out. (Emphasis added).

Staff of House Committee on the District of Columbia, 93d Cong., 2d Sess., Home Rule for the District of Columbia, 1973–1974, 1081 (Comm.Print 1974). We therefore conclude that § 1–147(a)(4) does not prohibit the Council from legislating as to the criminal status of specific acts.

---

11. D.C.Code 1978 Supp., § 1–147(a)(9) reads: The Council shall have no authority to . . . act . . . with respect to any provision of any law codified in title 22 or 24 (relating to crimes and treatment of prisoners), or with respect to any criminal offense pertaining to articles subject to regulation under chapter 32 of title 22 during the twenty-four full cal-

endar months immediately following the day on which the members of the Council first elected pursuant to this Act take office.

12. District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No. 91–358, 84 Stat. 473 (1970).

## II

Finally, we must consider whether a case adjudicated under the TAA is a "contested case" within the meaning of the DCAPA, D.C.Code 1978 Supp., § 1–1502(8), and is thus directly reviewable in the District of Columbia Court of Appeals, *see id.* § 1–1510. Amicus argues that TAA proceedings *are* contested cases because a trial-type hearing is required by the statute, D.C.Code 1980 Supp., §§ 40–1114, –1120, and because the hearing examiner performs an adjudicative function, "weighing particular information and arriving at a decision directed at the rights of specific parties." *Schneider v. District of Columbia Zoning Commission*, D.C.App., 383 A.2d 324, 326 (1978) (quoting *Chevy Chase Citizens Association v. District of Columbia Council*, D.C. App., 327 A.2d 310, 313 (1974)).

Though the adjudicative nature of TAA proceedings may be functionally consistent with the general definition of a contested case, the Council nevertheless has the authority to enact legislative exceptions to that definition. *See, e. g.*, D.C.Code 1978 Supp., § 1–1502(8)(A)–(D). *See generally id.* § 1–124 (legislative powers of the District). Moreover, the Council may do so by implication; it is not necessary that the text of the DCAPA itself be altered, as long as the legislative intent to create an exception is clear. For example, in *Columbia Realty Venture v. District of Columbia Housing Rent Commission*, D.C.App., 350 A.2d 120 (1975), this court held that Congress effectively excluded decisions of the Housing Rent Commission from DCAPA contested case review when it specifically vested review of Commission decisions in the Superior Court pursuant to the Rent Control Act of 1973, D.C.Code 1975 Supp., § 45–1625(a).[13] Though the Rent Control Act itself expired after one year, *id.* § 45–1627(a), the Superior Court retained equitable jurisdiction to review Commission decisions under the general equity powers prescribed by D.C.Code 1973, § 11–921(a). In *Columbia Realty Venture*, as here, the legislature's failure to amend the provisions of the DCAPA itself did not alter the legal effect of the new statute, which was to create an implied exception to DCAPA contested case review.

Indeed, the Council's *intent* to create an exception is even more clearly expressed in the Traffic Adjudication Act than was the intent of Congress in the Rent Control Act at issue in *Columbia Realty Venture.* The judicial review provision in the Rent Control Act did not mention the DCAPA. *See* D.C.Code 1975 Supp., § 45–1625(a).[14] Here, on the other hand, the statute provides for judicial review as follows:

> Appeals from decisions of the Appeals Board shall be by application for the allowance, of an appeal filed in the Superior Court of the District of Columbia within thirty (30) days of the decision of the Appeals Board: Provided, that appeals from the suspension or revocation of one's license or privilege to drive shall continue to be governed by section 1–1510. Except to the extent that this chapter provides otherwise, the manner of and standards for appeals to the Superior Court of the District of Columbia shall be as set forth in section 1–1510. [D.C.Code 1980 Supp., § 40–1125.]

This provision clearly explains the relationship of the DCAPA to TAA cases: license suspension and revocations remain "contest-

---

**13.** We note that there have been other instances as well in which review of administrative decisions has been vested by statute in the Superior Court. *See, e. g.*, D.C.Code 1973, § 11–921(a)(3)(B) (tax assessment appeals); *id.* 46–312 (Unemployment Compensation Board appeals) (amended in 1974 to provide for direct review in this court, *see* D.C.Code 1978 Supp., § 46–312).

**14.** Section 45–1625(a) stated:

Judicial Review.

(a) Any person or class of persons aggrieved by any decision of the Commission, or by any failure on the part of the Commission to act, may seek judicial review of such decision of failure by filing a petition for review in the Superior Court of the District of Columbia. The Commission on its own initiative, may commence a civil action to enforce the rules of the Council or of the Commission. Such an action brought by the Commission shall be brought in the Superior Court of the District of Columbia.

ed cases" and are appealable directly to this court. With respect to other actions of the Appeals Board, the Council has adopted the DCAPA model of a limited scope of judicial review, but has chosen a longer appeal period, a discretionary as opposed to mandatory review, and a different forum (Superior Court) in which the review is to be conducted. The Council stated its understanding of the judicial review section as follows:

> *Section 405* provides for judicial review of decisions of the Appeals Boards. The section does not apply to orders of suspension and revocation, which remains subject to [D.C.Code 1978 Supp., § 1–1510.] All other decisions of the Appeals Boards are subject to review by the Superior Court of the District of Columbia as provided in this section.
>
> A respondent may appeal a decision of an Appeals Board by filing an application in the Superior Court within 30 days of the Appeals Board decision. Except for the filing deadline and court jurisdiction, appeals under this section are governed by [D.C.Code 1978 Supp., § 1–1510.] Thus the scope of Superior Court review is limited to the record.
>
> The Superior Court must set aside any decision that is arbitrary, capricious, an abuse of discretion or not in accordance with law. The Superior Court must set aside any decision that is contrary to constitutional provision, statutory jurisdiction or required procedure.
>
> Finally, the Superior Court must set aside any decision unsupported by substantial evidence. Substantial evidence, the usual standard for appellate review of administrative decisions, is a lesser standard than a preponderance of the evidence. Substantial evidence is evidence a reasonable mind accepts as adequate to support a conclusion. [Committee on the Judiciary of the Council of the District of Columbia, "Report on Bill No. 2–195, District of Columbia Traffic Adjudication Act," at 26–27 (May 24, 1978).]

Plainly, the Council contemplated that it was creating an exception to contested case review under the DCAPA, particularly in light of the fact that it chose to retain contested case status for certain types of cases under the TAA (suspensions and revocations), but not for others. Thus we find no "conflict" between the TAA and the DCAPA as amicus contends. *See* D.C.Code 1978 Supp., § 1–1501. The legislative intent is sufficiently clear to support the inference of a legislative exception to the definition of "contested case" under the DCAPA.

The Home Rule Act provides additional support for the Council's authority to designate Superior Court as the forum for review of TAA cases, consistent with the DCAPA. Section 431(a) of the Home Rule Act provides that the District of Columbia Court of Appeals has jurisdiction to review orders and decisions of agencies, but only "to the extent provided by law." D.C.Code 1978 Supp., tit. 11, app. § 431(a). Thus, by amending the "law," the Council may remove certain administrative cases from the direct review jurisdiction of this court. In addition, the Home Rule Act states that the District of Columbia courts shall have jurisdiction over any other matters *granted* to them "by other provisions of law." *Id.* Again, by amending the law, the council may *add* cases to the jurisdiction of Superior Court, as it has properly done here.

Finally, it is important to note that, of course, all cases under the TAA are subject to final review by this court:

> We are not foreclosing all review of respondent's actions in this case or in other noncontested matters; we are foreclosing only direct review in this court. Any party aggrieved by an agency's decision may initiate an appropriate equitable action in the Superior Court to seek redress. Then depending on the outcome in the trial court, a party could choose to appeal to this court. [*Capitol Hill Restoration Society, Inc. v. Moore*, D.C.App., 410 A.2d 184, 188 (1979) (citations omitted); *see Wells v. District of Columbia Board of Education*, D.C.App., 386 A.2d 703, 706 (1978).]

*Reversed and remanded.*

KERN, Associate Judge, concurring:

When the Council of the District of Columbia determined to cease having certain minor traffic violations treated as offenses prosecuted in the trial court I am persuaded that such determination, as enacted in the Traffic Adjudication Act of 1978, passes statutory and constitutional muster.[1] The Act does not run afoul of the Home Rule Act since it is neither an act "with respect to any provision of title 23 . . . (relating to criminal procedure), or with respect to any provision . . . of titles 22 or 24 . . . (relating to crimes and treatment of prisoners)", nor is it an act "with respect to any provision of title 11 . . . (relating to organization and jurisdiction of the District of Columbia courts)." See D.C.Code 1978 Supp., § 1–147(a)(4) and (9).

In addition, the Act clearly meets the dictates of due process by providing for a hearing before a fine can be imposed or attendance at traffic school can be required of those who are found by the examiner to have committed traffic and parking infractions. The Act also creates an Appeals Board to provide administrative review of examiners' decisions and permits an application to the trial court for an allowance of an appeal so that there is a form of judicial review.[2]

I am not persuaded that these newly-constituted proceedings to dispose of this limited group of vehicular and pedestrian infractions constitute contested cases and so must be governed by the DCAPA. The term "contested case" has an established meaning within the context of administrative law. However, the Council, as enunciated in its Statement of Purpose and in the exercise of its police powers, was attempting by the Act to create "a uniform and more expeditious system . . . for the disposition of traffic *offenses.*" (Emphasis added.) To me, the Council by enacting the Act was attempting to divert criminal cases from the crowded dockets of the trial court into a different and more efficient system of disposition by civilian authority. I would analogize this to the use of United States Magistrates to dispose of minor criminal offenses to prevent further burgeoning of the federal district court dockets. See 18 U.S.C. § 3401.

Accordingly, I agree that the order of dismissal for want of jurisdiction must be reversed.

1. "Serious offenders" are specifically excepted from the reach of the Act. D.C.Code 1980 Supp., § 40–1111. In the instant case, appellees were found by a hearing examiner, respectively, to have failed to give full time and attention while operating a motor vehicle, turning left from the wrong lane and changing lanes without caution, and passing a red light.

2. Decisions that suspend or revoke a driver's license are to be reviewed pursuant to the District of Columbia Administrative Procedure Act. D.C.Code 1980 Supp., § 40–1125.