*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-1230

GERREN PRICE, PETITIONER,

V.

DISTRICT OF COLUMBIA BOARD OF ETHICS
AND GOVERNMENT ACCOUNTABILITY, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Board of Ethics and
Government Accountability
(1426-001)

(Submitted October 24, 2018                    Decided July 25, 2019)

*Erik J. Williams* was on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Stacy L. Anderson*, Acting Deputy Solicitor General, and *Jason Lederstein*, Assistant Attorney General, were on the brief, for respondent.

Before FISHER and EASTERLY, *Associate Judges*, and WASHINGTON, *Senior Judge*.

Opinion for the court by *Senior Judge* WASHINGTON.

Dissenting opinion by *Associate Judge* EASTERLY at page 14.

WASHINGTON, *Senior Judge*:  Before us is a petition for review of a final

decision by the District of Columbia Board of Ethics and Government

Accountability ("Ethics Board"), filed by Gerren Price. Price was found to have violated two sections of the District of Columbia Code of Conduct, 6-B DCMR §§ 1806.3 and 1806.6 (2014). Having concluded that the referenced petition was improperly filed in this court, we dismiss this petition for lack of jurisdiction. However, because the proper forum for review of his petition was unclear at the time of the filing, Price will have twenty days from the issuance date of this opinion to file a petition for review in the Superior Court.

## I.  Facts and Procedural History

This case stems from Price's role in the hiring of his sister-in-law as a Case Management Specialist for the District of Columbia's Summer Youth Employment Program in June 2015, while Price was Deputy Director of the Youth Workforce Development Department of the Office of Youth Programs for the Department of Employment Services. On November 29, 2016, following an evidentiary hearing, the Ethics Board found that Price violated the District's Code of Conduct §§ 1806.3 and 1806.6 by advancing his sister-in-law's resume and by failing to file a written recusal after becoming aware that she applied for the position. Because we do not reach the merits of this case, we dispense with a detailed examination of the facts. The Ethics Board ordered Price to pay a civil penalty of $1,500 for each

violation, totaling $3,000, and to pay $26,182.10 in restitution to the District for violating § 1806.3. Price appealed the Ethics Board decision to this court, although D.C. Code § 1-1162.17 (2012 Repl.) provides that Ethics Board decisions shall be appealed to the Superior Court. Citing to past Superior Court decisions, Price contends that § 1-1162.17 is invalid because it violates the Home Rule Act, D.C. Code § 1-206.02(a)(4) (2012 Repl.), and this court has direct review jurisdiction under the District of Columbia Administrative Procedure Act, D.C. Code § 2-510(a) (2012 Repl.).

## II. Discussion

The primary question before us is whether we have direct review jurisdiction over an Ethics Board contested case. This is an issue of first impression for this court, and the answer to this question turns largely on the interplay among provisions of three statutes: (1) the District of Columbia Administrative Procedure Act of 1968 ("DCAPA"), which vests this court with exclusive jurisdiction to review an agency's decision in a contested case, D.C. Code § 2-510(a) (2012 Repl.); (2) the Home Rule Act of 1973, which provides that the D.C. Council "shall have no authority" to enact laws "with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia courts)," D.C.

Code § 1-206.02(a)(4) (2012 Repl.); and (3) the Board of Ethics and Government Accountability Establishment and Comprehensive Ethics Reform Amendment Act of 2011 ("Ethics Act"), which provides that Ethics Board decisions shall be appealed to the Superior Court, D.C. Code § 1-1162.17 (2012 Repl.). As a question of law involving statutory construction, our review is de novo. *District of Columbia Pub. Schs. v. District of Columbia Dep't of Emp't Servs.*, 123 A.3d 947, 949 (D.C. 2015).

## 1. Statutory Background

In 1968, Congress enacted the DCAPA, Pub. L. No. 90-614, 82 Stat. 1203 (1968) (codified as amended at D.C. Code § 2-501.01 *et seq.* (2012 Repl.)), to prescribe administrative procedures for the District of Columbia government. The DCAPA provides that generally "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of . . . an agency in a contested case, is entitled to a judicial review . . . upon filing in the District of Columbia Court of Appeals a written petition for review." D.C. Code § 2-510(a). It is well established that this provision vests the Court of Appeals with exclusive jurisdiction to hear an agency "contested case," and the Superior Court may not maintain concurrent jurisdiction. *Euclid St., LLC v. District of Columbia Water &*

*Sewer Auth.*, 41 A.3d 453, 457 (D.C. 2012).  The DCAPA defines "contested case" as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law . . . or by constitutional right, to be determined after a hearing before the Mayor or before an agency." D.C. Code § 2-502(8) (2012 Repl.).  We have held that a "contested case" refers to a "trial-type hearing" that is "adjudicatory" and "is concerned basically with weighing particular information and arriving at a decision directed at the rights of specific parties." *Euclid St.*, 41 A.3d at 458 (citation omitted).

In 1973, Congress enacted the Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (1973) (codified as amended at D.C. Code § 1-201.01 *et seq.* (2012 Repl.)), to give the D.C. Council "broad authority to legislate upon all rightful subjects of legislation within the District."  *Woodroof v. Cunningham*, 147 A.3d 777, 782 (D.C. 2016) (citation and internal quotation marks omitted).  However, Congress also limited the Council's ability to legislate on certain subjects, including the jurisdiction of the D.C. courts.  *Id.* at 782-83.  The Home Rule Act, as amended, provides:  "The Council shall have no authority to . . . [e]nact any act, resolution, or rule with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia courts)."  D.C. Code § 1-206.02(a)(4).

In 2012, the D.C. Council passed the Ethics Act, which established the Ethics Board and empowered it to adjudicate violations of the District's Code of Conduct and levy civil penalties. D.C. Code §§ 1-1162.02(a)(4), 1-1162.15(a)(1). The Ethics Act requires the Ethics Board to conduct an open and adversarial hearing in accordance with the DCAPA's procedural protections for contested cases in order to find a violation and levy a penalty. D.C. Code §§ 1-1162.14(a), (b), 1-1162.15(a)(1); 2-509. However, the Ethics Act provides that appeals of these decisions shall be made to the Superior Court. D.C. Code § 1-1162.17.

## 2. Parties' Arguments

The parties agree that the proceeding before the Ethics Board was a "contested case" that would ordinarily be reviewed by this court.[1] Thus, Price contends that in accordance with the DCAPA, this court has direct and exclusive

---

[1] We agree that Ethics Board proceedings such as this one meet the definition of a contested case. Ethics Board proceedings are typically adjudicative because they determine whether an individual has violated the District's Code of Conduct and should be subject to a penalty. D.C. Code §§ 1-1162.02(a)(4), 1-1162.15 (2012 Repl.). Further, in order for the Ethics Board to determine a violation and order a penalty, the Ethics Act requires an "open and adversarial hearing" in accordance with the DCAPA's procedures for contested cases, including presentation of oral and documentary evidence, calling and cross-examining witnesses, and making a decision on the record created at the hearing. D.C. Code §§ 1-1162.14(a), (b); 1-1162.21(a)(2); 2-509(b), (c), (e) (2012 Repl.).

review jurisdiction over this case. Price relies on past Superior Court cases holding that the Court of Appeals has exclusive jurisdiction over Ethics Board decisions, and argues that § 1-1162.17, the provision directing appeals of Ethics Board decisions to the Superior Court, is invalid because it violates the Home Rule Act's prohibition of legislating with regard to the jurisdiction of the D.C. courts by the D.C. Council, D.C. Code § 1-206.02(a)(4). *See Hicks v. District of Columbia Bd. of Ethics & Gov't Accountability*, No. 2014 CA 1165 P, at 9, 12 (D.C. Super. Ct. Feb. 13, 2015); *Walker v. District of Columbia*, No. 2014 CA 918 B, at 4, 11-12 (D.C. Super. Ct. July 14, 2015).

However, the Ethics Board, changing the position it took in the above-referenced Superior Court cases, now argues that the Ethics Act is a valid legislative enactment that does not violate the Home Rule Act because the Ethics Act impliedly amended the DCAPA's definition of a contested case by excluding Ethics Board proceedings from that definition, D.C. Code § 1-1162.17. Thus, the Ethics Board now argues that the initial review of Ethics Board decisions is properly vested in the Superior Court. We agree with the Ethics Board's interpretation of the statute.

### 3. Analysis

**a. The Home Rule Act does not prevent the D.C. Council from vesting the Superior Court with jurisdiction to review Ethics Board decisions.**

The Home Rule Act, in D.C. Code § 1-206.02(a)(4), provides that the Council lacks the authority to enact laws "with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia courts)." We have construed this provision narrowly to mean that the Council is precluded from amending Title 11 itself. *Woodruff*, 147 A.3d at 782, 784. Otherwise, the Council has "broad legislative power so as not to thwart the paramount purpose of the Home Rule Act, namely, to grant inhabitants of the District of Columbia powers of local self-government." *Andrew v. American Imp. Ctr.*, 110 A.3d 626, 629 (D.C. 2015) (quoting *Bergman v. District of Columbia*, 986 A.2d 1208, 1226 (D.C. 2010)) (internal quotation marks and alterations omitted). In this case, the Council has not sought to amend "any provision of Title 11," but instead amended the contested case provision of the DCAPA codified in D.C. Code § 2-510(a). There is no provision in Title 11 itself relating to the contested case requirement. *See* D.C. Code §11-722 (2012 Repl.).

We have previously held that the D.C. Council has the authority to enact legislative exceptions to the DCAPA's definition of a contested case and direct the initial review of a proceeding that is functionally equivalent to a contested case to the Superior Court. *District of Columbia v. Sullivan*, 436 A.2d 364, 367 (D.C. 1981). In reaching that conclusion, we found support for the Council's authority to do so in the Home Rule Act itself:

> [T]he Home Rule Act provides that the District of Columbia Court of Appeals has jurisdiction to review orders and decisions of agencies, but only "to the extent provided by law." [D.C. Code § 1-204.31(a)]. Thus, by amending the "law," the Council may remove certain administrative cases from the direct review jurisdiction of this court. In addition, the Home Rule Act states that the District of Columbia courts shall have jurisdiction over any other matters granted to them "by other provisions of law." *Id.* Again, by amending the law, the council may add cases to the jurisdiction of the Superior Court . . . .

*Id.* at 368.

The dissent contends that *Sullivan* directly conflicts with our earlier decision in *Capitol Hill Restoration Society, Inc. v. Moore*, 410 A.2d 184 (D.C. 1979). However, that case is distinguishable because there the statute passed by the Council vested the Court of Appeals with initial review jurisdiction of agency noncontested cases that inherently lack a complete and detailed factual record that

would enable us to properly exercise our jurisdiction to review agency decisions. *Id.* at 188; D.C. Code § 11-722. By contrast, we are fully capable of reviewing an agency contested case that has been reviewed by the Superior Court in the first instance. *See Sullivan*, 436 A.2d at 368. The Ethics Act merely adds an additional layer of review by the Superior Court, and that does not limit our review jurisdiction of agency cases because the Superior Court's initial review does not affect our scope or standard of review in any way. *See, e.g.*, *Dupree v. District of Columbia Dep't of Corrections*, 132 A.3d 150, 154 (D.C. 2016) ("[W]e review agency decisions on appeal from the Superior Court the same way we review administrative appeals that come to us directly."). Therefore, we conclude that the Ethics Act's granting of jurisdiction to the Superior Court to provide initial review of Ethics Board decisions does not violate the Home Rule Act, D.C. Code § 1-206.02(a)(4), and is a valid exercise of legislative authority by the D.C. Council.

**b. The Ethics Act impliedly amended the DCAPA's definition of a contested case to exclude Ethics Board proceedings from the definition.**

Having concluded that the Ethics Act, D.C. Code § 1-1162.17, does not run afoul of the Home Rule Act, we must now determine whether the D.C. Council intended to exclude Ethics Board proceedings from the definition of a contested

case under the DCAPA. We have held that the D.C. Council may enact exceptions to the definition of a contested case "by implication" and that as long as there is a clear legislative intent to amend the DCAPA, the text of the DCAPA itself need not be altered. *Sullivan*, 436 A.2d at 367. Thus, the legislature's failure to amend the DCAPA itself is not determinative of whether it intended to create an exception to the DCAPA's definition of a contested case. *Id.*

Legislative intent to amend the DCAPA is present if the legislature specifically vests review of an agency decision in a contested case in the Superior Court, even if the statute's judicial review provision does not mention the DCAPA. *See id.* Legislative intent to amend the DCAPA is even clearer if the statute's text demonstrates that the Council plainly contemplated creating an exception to this court's contested case review. *See id.* at 367-68. In *Sullivan*, we concluded that the Traffic Adjudication Act of 1978 clearly expressed the Council's intent to create an exception to this court's contested case review because its judicial review provision provided that certain types of cases were to be reviewed by the Superior Court, while other types of cases retained their contested case status and were to be reviewed by this court in accordance with the DCAPA, 436 A.2d at 367-68.

Here, we similarly find sufficiently clear legislative intent to create an exception to the DCAPA's definition of a contested case. The Ethics Act plainly directs review of Ethics Board decisions to the Superior Court. D.C. Code § 1-1162.17 ("Appeals of any order or fine made by the [Ethics] Board in accordance with this subchapter shall be made to the Superior Court of the District of Columbia."). Although § 1-1162.17 does not reference the DCAPA, a different section of the Ethics Act, § 1-1162.14(b), requires the Ethics Board to conduct hearings in accordance with the DCAPA's procedural protections for contested cases. D.C. Code § 1-1162.14(b) ("Any hearing under this section shall be of record and shall be held in accordance with Chapter 5 of Title 2."). By simultaneously providing that Ethics Board proceedings shall follow the procedures for a contested case and then directing review of Ethics Board decisions to the Superior Court, the Ethics Act, like the statute in *Sullivan*, 436 A.2d at 367-68, indicates that the Council intended to make an exception to the DCAPA's definition of a contested case.

Additionally, the Ethics Act's legislative history supports our conclusion that the Council intended to amend the DCAPA because an earlier iteration of the Ethics Act had directed appeals of Ethics Board decisions to this court. D.C. Council, Report on Bill 19-511 at 270 (Dec. 5, 2011) ("Appeals to any order, or

fine made by the Board in accordance with this act shall be made to the D.C. Court of Appeals."). Later, the Council revised this language and provided for judicial review in the Superior Court, which ultimately became the law. While we do not know why the Council changed the judicial review provision in its drafting process, this sequence of events strongly supports the conclusion that vesting the Superior Court with initial jurisdiction to review Ethics Board decisions was a conscious and intentional decision by the D.C. Council.[2] Therefore, we are satisfied that the Council intended to amend the DCAPA to remove decisions by the Ethics Board from the definition of contested cases over which the D.C. Court of Appeals has primary review jurisdiction and, instead, vest the Superior Court with initial review jurisdiction over those decisions.

Thus, for the foregoing reasons, we dismiss Price's petition for review as having been filed in the wrong court. However, we recognize that prior decisions of the Superior Court reasonably led Price to file his petition in this court. Because it is not clear that Price's filing in this court is sufficient to protect his appeal from attack as being untimely, and even though we are confident that Price's failure to

---

[2] While it is not clear why the Council decided to implicitly amend the DCAPA to make Ethics Board decisions reviewable by the Superior Court, it certainly would not be unreasonable for it to have considered it wise to add an independent layer of review to the process to better insulate the Board from charges of political cronyism or other political malfeasance.

timely file a petition for review in the Superior Court would be found to satisfy the requirements for excusable neglect pursuant to Super. Ct. Civ. R. 6 (b)(1)(B), we nonetheless order, consistent with Ethics Board regulations, 3 DCMR § 5404.1 (2013), that petitioner has twenty days from the issuance date of this opinion to file a petition for review of the Ethics Board decision in the Superior Court.

*So ordered.*

EASTERLY, *Associate Judge*, dissenting: "The parties agree that the proceeding before the Ethics Board was a 'contested case.'" *Ante* at 6. The District of Columbia Administrative Procedure Act (DCAPA) provides that "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency *in a contested case*, is entitled to a judicial review thereof in accordance with this subchapter upon filing in the District of Columbia Court of Appeals a written petition for review." D.C. Code § 2-510(a) (emphasis added). The Court Reorganization Act, specifically D.C. Code § 11-722(1), confers upon the Court of Appeals "jurisdiction . . . to review orders and decisions" in D.C. agency cases, "in accordance with the [DCAPA]." Lastly, D.C.

Code § 1-206.02(a)(4) enacted as part of the Home Rule Act[1] provides that "[t]he Council shall have no authority to . . . [e]nact any act, resolution, or rule with respect to any provision of Title 11 (referring to the organization and jurisdiction of the District of Columbia Courts)[.]"

Against this statutory backdrop, I cannot agree that the Council had the authority to enact D.C. Code § 1-1162.17, which interferes with this court's exclusive jurisdiction to review contested cases arising out of Ethics Board decisions by sending these cases first to the Superior Court. It is true that we have said that the limitations imposed by D.C. Code § 1-206.02(a)(4) "must be construed as a narrow exception to the Council's otherwise broad legislative power so as not to thwart the paramount purpose of the Home Rule Act, namely, to grant inhabitants of the District of Columbia powers of local self-government." *Andrew v. Am. Imp. Ctr.*, 110 A.3d 626, 629 (D.C. 2015) (internal quotation marks and brackets omitted). But it is also true that that Congress did not give the District full home rule; it retained plenary legislative power. *Brizill v. District of Columbia Bd. of Elections & Ethics*, 911 A.2d 1212, 1213 (D.C. 2006) ("Congress enacted . . . the District of Columbia Home Rule Act, delegating some, but not all,

---

[1] District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 774 (1973).

of its legislative powers to the Council of the District of Columbia while retaining ultimate legislative authority over the District."); *see also Marijuana Policy Project v. United States*, 304 F.3d 82, 84 (D.C. Cir. 2002) ("[T]hrough the Home Rule Act, Congress delegated some, but not all, of its Article I 'exclusive' legislative authority over the District of Columbia to the D.C. Council."). And it specifically prohibited the Council from altering the jurisdiction of our court as set forth in Title 11. D.C. § 1-206.02(a)(4).

The Majority Opinion cites *Woodroof v. Cunningham*, 147 A.3d 777 (D.C. 2016), for the proposition that "[w]e have construed this [statutory] provision narrowly to mean that the Council is precluded from amending Title 11 itself." *Ante* at 8. *Woodroof* does not say this.[2] To the contrary, in *Woodroof* we explained that "[s]ection 1–206.02 (a)(4) . . . precludes legislation 'with respect to' the jurisdiction of the courts" and further that an "attempting to bypass the 'contested case' requirement of the District of Columbia Administrative Procedure

---

[2] Similarly, this court's recognition of the Council's "broad legislative power," *ante* at 8 (quoting *Andrew*, 110 A.3d at 629); see also *supra*, does not support the Majority Opinion's conception of the Council's authority in this sphere. It is one thing to note that the Council's otherwise broad authority to legislate is limited by a narrow exception with respect to the jurisdiction of the courts. It is another thing entirely to say that we narrowly construe that exception. Our cases support the former, not the latter, proposition. *See, e.g.*, *Andrew*, 110 A.3d at 629; *Woodroof*, 147 A.3d at 784.

Act ("DCAPA")" was an "example" of legislation that "violates the Home Rule Act." 147 A.3d at 784.

The Majority Opinion relies on *District of Columbia v. Sullivan*, 436 A.2d 364 (D.C. 1981), for the proposition that the Council "has the authority to enact legislative exceptions to th[e] definition" of a contested case, *id.* at 367, and thus the power to enact D.C. Code § 1-1162.17. *Sullivan*'s analysis is subject to question[3] and in direct conflict with the language of the Home Rule Act, which imposes a blanket prohibition on the enactment by the Council of any legislation "with respect to any provision of Title 11." More importantly for the resolution of this case, *Sullivan* is in direct conflict with this court's earlier decision in *Capitol Hill Restoration Society v. Moore*, 410 A.2d 184 (D.C. 1979), where we held that the Home Rule Act prohibits the Council from altering this court's "jurisdiction to *directly* review" agency actions. *Id.* at 187 (emphasis added).

---

[3] *Sullivan* relied on *Columbia Realty Venture v. District of Columbia Hous. Rent Comm'n*, 350 A.2d 120 (D.C. 1975), to reach its conclusion. In that case, the petitioners sought direct review of orders by the D.C. Housing Rent Commission, *see* 350 A.2d at 121, which *Congress* had explicitly excepted from the DCAPA scheme in the Rent Control Act of 1973, vesting the Superior Court rather than this court with jurisdiction over the Commission's decisions. *Id.* at 122, 123. Of course, Congress is authorized to create new exceptions to the DCAPA contested case rule. But that does not mean the Council is so empowered.

Granted, in *Capitol Hill Restoration Society*, the Council had attempted to expand our jurisdiction to noncontested cases, whereas in this case, the Council has attempted to divert a set of contested cases to Superior Court. But either way, the scope of this court's direct review jurisdiction of agency cases is affected, in contravention of the Home Rule Act. The point is not, as the Majority Opinion indicates, that there is no harm (and thus no foul) if the Council simply inserts "an additional layer of review" preceding review by this court, *ante* at 10, because in the broad sense this court's jurisdiction remains the same: jurisdiction will lie in this court to review any decision emerging from Superior Court. That was also true in *Capitol Hill Restoration Society*. There, the Council's enactment did not expand our jurisdiction in the broad sense, because this court would ultimately have had the power to review any decision of the Superior Court. The Council simply attempted to cut out the middleman, i.e., the Superior Court, by sending certain noncontested cases directly to this court for review. *See* 410 A.2d at 188. Nonetheless, we determined in *Capitol Hill Restoration Society* that the Council had exceeded its authority under the Home Rule Act.

The Majority Opinion also seeks to distinguish *Capitol Hill Restoration Society* because, in that case, the Council sought to direct uncontested cases, with undeveloped records, to this court, whereas here, "we are fully capable of

reviewing an agency contested case that has been reviewed by the Superior Court in the first instance." *Ante* at 10. But the Majority Opinion fails to explain why the Council has the power to inject this extra layer of review given that Congress determined in the DCAPA that "contested cases" are ripe for review by this court and gave this court exclusive jurisdiction to hear this category of agency decisions.

As *Capitol Hill Restoration Society* predates *Sullivan*, it is controlling, *see M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). Indeed, decisions subsequent to *Sullivan* have expressly or implicitly followed *Capitol Hill Restoration Society*, *see, e.g.*, *Burkhardt v. District of Columbia Rental Hous. Comm'n*, 198 A.3d 183, 187–88 (D.C. 2018) (quoting *Woodroof*, 147 A.3d at 784 ("We have held, for example, that attempting to bypass the 'contested case' requirement of the [DCAPA] violates the Home Rule Act." (citing *Capitol Hill Restoration Society*, 410 A.2d at 186))), and upheld this court's "exclusive authority to review contested cases," *see Owens v. District of Columbia Water & Sewer Auth.*, 156 A.3d 715, 717 (D.C. 2017); *accord Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1099 (D.C. 2015). Notably, until now—thirty-eight years after

*Sullivan* was decided—it appears this court has not relied on it even once to empower the Council evade the strictures of the Home Rule Act and the DCAPA.[4]

For these reasons, I respectfully dissent.

---

[4] I am also skeptical that the Council intended to evade these strictures with the enactment of the Ethics Act. Although the statute expressly directs that the Ethics Board employ contested case procedures and elsewhere provides that "appeals" of Ethics Board orders "shall be made to the Superior Court," *ante* at 11, the statute never connects the dots, and it seems just as likely that the Council unwittingly enacted legislation in contravention of the DCAPA. (The legislative history does not negate this possibility).