Easterly, Associate Judge, dissenting:
"The parties agree that the proceeding before the Ethics Board was a 'contested case.' " Ante at 844. The District of Columbia Administrative Procedure Act (DCAPA) provides that "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case , is entitled to a judicial review thereof in accordance with this subchapter upon filing in the District of Columbia Court of Appeals a written petition for review." D.C. Code § 2-510(a) (emphasis added). The Court Reorganization Act, specifically D.C. Code § 11-722(1), confers upon the Court of Appeals "jurisdiction ... to review orders and decisions" in D.C. agency cases, "in accordance with the [DCAPA]." Lastly, D.C. Code § 1-206.02(a)(4) enacted as part of the Home Rule Act[1] provides that "[t]he Council shall have no authority to ... [e]nact any act, resolution, or rule with respect to any provision of Title 11 (referring to the organization and jurisdiction of the District of Columbia Courts)[.]"
*848 Against this statutory backdrop, I cannot agree that the Council had the authority to enact D.C. Code § 1-1162.17, which interferes with this court's exclusive jurisdiction to review contested cases arising out of Ethics Board decisions by sending these cases first to the Superior Court. It is true that we have said that the limitations imposed by D.C. Code § 1-206.02(a)(4) "must be construed as a narrow exception to the Council's otherwise broad legislative power so as not to thwart the paramount purpose of the Home Rule Act, namely, to grant inhabitants of the District of Columbia powers of local self-government." Andrew v. Am. Imp. Ctr. , 110 A.3d 626, 629 (D.C. 2015) (internal quotation marks and brackets omitted). But it is also true that that Congress did not give the District full home rule; it retained plenary legislative power. Brizill v. District of Columbia Bd. of Elections & Ethics , 911 A.2d 1212, 1213 (D.C. 2006) ("Congress enacted ... the District of Columbia Home Rule Act, delegating some, but not all, of its legislative powers to the Council of the District of Columbia while retaining ultimate legislative authority over the District."); see also Marijuana Policy Project v. United States , 304 F.3d 82, 84 (D.C. Cir. 2002) ("[T]hrough the Home Rule Act, Congress delegated some, but not all, of its Article I 'exclusive' legislative authority over the District of Columbia to the D.C. Council."). And it specifically prohibited the Council from altering the jurisdiction of our court as set forth in Title 11. D.C. § 1-206.02(a)(4).
The Majority Opinion cites Woodroof v. Cunningham , 147 A.3d 777 (D.C. 2016), for the proposition that "[w]e have construed this [statutory] provision narrowly to mean that the Council is precluded from amending Title 11 itself." Ante at 845. Woodroof does not say this.[2] To the contrary, in Woodroof we explained that "[s]ection 1-206.02 (a)(4) ... precludes legislation 'with respect to' the jurisdiction of the courts" and further that an "attempting to bypass the 'contested case' requirement of the District of Columbia Administrative Procedure Act ("DCAPA")" was an "example" of legislation that "violates the Home Rule Act." 147 A.3d at 784.
The Majority Opinion relies on District of Columbia v. Sullivan , 436 A.2d 364 (D.C. 1981), for the proposition that the Council "has the authority to enact legislative exceptions to th[e] definition" of a contested case, id . at 367, and thus the power to enact D.C. Code § 1-1162.17. Sullivan 's analysis is subject to question[3] and in direct conflict with the language of the Home Rule Act, which imposes a blanket prohibition on the enactment by the Council of any legislation "with respect to *849 any provision of Title 11." More importantly for the resolution of this case, Sullivan is in direct conflict with this court's earlier decision in Capitol Hill Restoration Society v. Moore , 410 A.2d 184 (D.C. 1979), where we held that the Home Rule Act prohibits the Council from altering this court's "jurisdiction to directly review" agency actions. Id. at 187 (emphasis added).
Granted, in Capitol Hill Restoration Society , the Council had attempted to expand our jurisdiction to noncontested cases, whereas in this case, the Council has attempted to divert a set of contested cases to Superior Court. But either way, the scope of this court's direct review jurisdiction of agency cases is affected, in contravention of the Home Rule Act. The point is not, as the Majority Opinion indicates, that there is no harm (and thus no foul) if the Council simply inserts "an additional layer of review" preceding review by this court, ante at 846, because in the broad sense this court's jurisdiction remains the same: jurisdiction will lie in this court to review any decision emerging from Superior Court. That was also true in Capitol Hill Restoration Society . There, the Council's enactment did not expand our jurisdiction in the broad sense, because this court would ultimately have had the power to review any decision of the Superior Court. The Council simply attempted to cut out the middleman, i.e., the Superior Court, by sending certain noncontested cases directly to this court for review. See 410 A.2d at 188. Nonetheless, we determined in Capitol Hill Restoration Society that the Council had exceeded its authority under the Home Rule Act.
The Majority Opinion also seeks to distinguish Capitol Hill Restoration Society because, in that case, the Council sought to direct uncontested cases, with undeveloped records, to this court, whereas here, "we are fully capable of reviewing an agency contested case that has been reviewed by the Superior Court in the first instance." Ante at 846. But the Majority Opinion fails to explain why the Council has the power to inject this extra layer of review given that Congress determined in the DCAPA that "contested cases" are ripe for review by this court and gave this court exclusive jurisdiction to hear this category of agency decisions.
As Capitol Hill Restoration Society predates Sullivan , it is controlling, see M.A.P. v. Ryan , 285 A.2d 310, 312 (D.C. 1971). Indeed, decisions subsequent to Sullivan have expressly or implicitly followed Capitol Hill Restoration Society , see, e.g. , Burkhardt v. District of Columbia Rental Hous. Comm'n , 198 A.3d 183, 187-88 (D.C. 2018) (quoting Woodroof , 147 A.3d at 784 ("We have held, for example, that attempting to bypass the 'contested case' requirement of the [DCAPA] violates the Home Rule Act." (citing Capitol Hill Restoration Society , 410 A.2d at 186 ))), and upheld this court's "exclusive authority to review contested cases," see Owens v. District of Columbia Water & Sewer Auth. , 156 A.3d 715, 717 (D.C. 2017) ; accord Mathis v. District of Columbia Hous. Auth. , 124 A.3d 1089, 1099 (D.C. 2015). Notably, until now-thirty-eight years after Sullivan was decided-it appears this court has not relied on it even once to empower the Council evade the strictures of the Home Rule Act and the DCAPA.[4]
For these reasons, I respectfully dissent.

District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 774 (1973).

Similarly, this court's recognition of the Council's "broad legislative power," ante at 845 (quoting Andrew , 110 A.3d at 629 ); see also supra , does not support the Majority Opinion's conception of the Council's authority in this sphere. It is one thing to note that the Council's otherwise broad authority to legislate is limited by a narrow exception with respect to the jurisdiction of the courts. It is another thing entirely to say that we narrowly construe that exception. Our cases support the former, not the latter, proposition. See, e.g. , Andrew , 110 A.3d at 629 ; Woodroof , 147 A.3d at 784.

Sullivan relied on Columbia Realty Venture v. District of Columbia Hous. Rent Comm'n , 350 A.2d 120 (D.C. 1975), to reach its conclusion. In that case, the petitioners sought direct review of orders by the D.C. Housing Rent Commission, see 350 A.2d at 121, which Congress had explicitly excepted from the DCAPA scheme in the Rent Control Act of 1973, vesting the Superior Court rather than this court with jurisdiction over the Commission's decisions. Id . at 122, 123. Of course, Congress is authorized to create new exceptions to the DCAPA contested case rule. But that does not mean the Council is so empowered.

I am also skeptical that the Council intended to evade these strictures with the enactment of the Ethics Act. Although the statute expressly directs that the Ethics Board employ contested case procedures and elsewhere provides that "appeals" of Ethics Board orders "shall be made to the Superior Court," ante at 846, the statute never connects the dots, and it seems just as likely that the Council unwittingly enacted legislation in contravention of the DCAPA. (The legislative history does not negate this possibility).